Paulo Jose SANCHEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00519–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 2007.

Discretionary Review Refused Oct. 31, 2007.

Brian W. Wice, The Lyric Center, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS and BLAND.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Paulo Jose Sanchez, guilty of the offense of possession with intent to deliver a controlled substance, namely cocaine, weighing more than 200 grams but less than 400 grams,[1] and, after finding that appellant used or exhibited a deadly weapon during the commission of the offense or during the immediate flight therefrom, assessed his punishment at confinement for fifteen years and a $40,000.00 fine. In six points of error, appellant contends that his trial counsel rendered ineffective assistance of counsel during both the guilt and punishment phases of the trial, the evidence is legally and factually insufficient to sustain the jury's finding that appellant used or exhibited a deadly weapon during the commission of the offense, and the trial court erred at the punishment phase in not charging the jury on parole law and all of the applicable terms and conditions of community supervision.

We affirm.

### Factual and Procedural Background

Houston Police Department ("HPD") Officer R. Morales testified that on August 31, 2005, he received information from a confidential informant that a large quantity of cocaine was present at 6543 Avenue I in Houston. Based on that information, Morales secured a search and arrest warrant for appellant.

Morales explained that there were surveillance cameras monitoring the exterior of the house. Inside the house, on top of a small coffee table in the living room, was a "big clear plastic bowl" containing 353 grams of cocaine. The cocaine was sitting on top of a scale. Across from the coffee table, "small baggies" of cocaine were located inside a dresser.[2] Morales also found "multikilo baggies" on the floor containing traces of cocaine, spoons and measuring cups containing "caked-on" cocaine used to transfer cocaine, two sifters in the "southeast bedroom," at least four measuring scales, and a drug ledger inside the house. Officers also found pictures of appellant throughout the house and a xeroxed copy of appellant's driver's license, listing his address as 6543 Avenue I, in a drawer next to "baggies of cocaine." Three bills, one from BlueCross BlueShield, one from Stonebridge Life Insurance Company, and one water bill, were addressed to appellant at that address.[3] Officers recovered nine firearms in the bedroom closest to the living room, where "the majority of the cocaine was found," likely used to "protect their dope." The nine firearms consisted of a Winchester .308 rifle model 70 XTR with scope, Glenfield .22 rifle model 60, Sears & Roebuck .22 rifle model 3T, Universal .30 rifle, Norinco SKS pistol, Smith & Wesson .357 revolver model 662, Ruger .357 revolver Security–Six, RG .38 special revolver, and one shotgun that had been "reported stolen." Morales further explained that, based on his experience, the presence of surveillance cameras and the quantity of cocaine recovered indicated that the cocaine was "being

---

1. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp.2006), § 481.112(a), (e) (Vernon 2003).

2. Officer Morales testified that "[t]wo clear baggies [that] weighed 12.50 grams" were recovered from the dresser drawer and anoth-

er "clear baggie that had 12.50 grams by itself ... was found in the top dresser also."

3. Morales explained that "all the bills and names were-in [appellant's] name. So we just took three and we left the rest there."

cut up to sell" and not solely for personal use. While conducting surveillance over a four-month period, Morales saw appellant present each of the approximately five times that Morales went to the residence.

HPD Officer R. Bradley testified that on August 31, 2005, he drove to 6543 Avenue I to assist Officers Morales and Gonzales with their surveillance. Bradley saw appellant get into a truck with another male and one or two young children. Bradley, in an unmarked truck, followed appellant to a Shell gas station. At the gas station, Bradley approached appellant, identified himself, and told appellant why he was speaking with him. After they moved to an empty lot across the street, appellant denied that he had any narcotics at his residence, and Bradley asked appellant to sign a consent to search the house. Appellant refused and told Bradley to secure a warrant. While detaining appellant, Bradley received a call from Morales informing him that he had secured a warrant. Appellant admitted having twenty dollars worth of cocaine, or about 0.5 grams, in his wallet. An additional twenty-dollar bag of cocaine was discovered in appellant's car. A uniformed officer then took appellant to the residence in a marked patrol car.

Bradley further testified that as the officers served the warrant at the residence, they noticed that a security camera was located on the right front corner of the house. While appellant was inside the patrol car, the officers entered the house using a battering ram because of the presence of the security camera and because they had been told that firearms were present inside the house. Bradley noted that the house was unoccupied when the officers entered and appellant had a key to the house on his key ring.

Appellant testified that he lived at 926 Forest Oak Drive for approximately five years before his arrest. The longest period of time that he had been away from that residence was a three-week period when he had a fight with his wife, Elizabeth Guerra. Appellant explained that he had previously lived at 6543 Avenue I for four years with his ex-wife. At the time that he was arrested, appellant had been staying at the house at 6543 Avenue I for about one week while he was on vacation, and he had been out of his house for about three weeks. During that three-week period, appellant also stayed at his brother's house and then his mother's house. Appellant knew that the residents sold narcotics and that there were narcotics in the house, but he did not see any narcotics in the living room. He also knew that one of the residents of the house had a gun, but he was not aware that the resident had several guns.

Elizabeth Guerra, appellant's wife, testified that at the time appellant was arrested, the two were separated and he had stayed for three weeks with friends at 6543 Avenue I in a house owned by his aunt. She explained that appellant had lived at the property on Avenue I with his ex-wife, but that he had moved out of that house five years prior to his arrest. Juan Sanchez, appellant's brother, testified that although appellant was "staying at" a house next to his aunt's house when he was arrested, he was not "living at" that residence. Dalton Francis, Jr., a pretrial services officer with Harris County, testified that when he interviewed appellant, appellant told Francis that he lived at 6543 Avenue I in Houston and had been living there for about ten years.

After the jury found appellant guilty and assessed his punishment and the trial court signed its judgment and sentence, appellant filed a motion for new trial, asserting that his trial counsel provided him with ineffective assistance. After hearing

the evidence and arguments of counsel, the trial court denied the motion.

## Ineffective Assistance

In his first point of error, appellant argues that he received ineffective assistance of counsel at the guilt phase of his trial because his trial counsel failed to (1) object to the admission of the search warrant and return; (2) object to inadmissible hearsay that the arresting officer received information from a confidential informant; (3) file a motion to disclose the identity of the confidential informant pursuant to Texas Rule of Evidence 508;[4] and (4) object when the trial court failed to comply with the mandatory provisions of article 36.27 of the Texas Code of Criminal Procedure.[5] In his second point of error, appellant argues that he received ineffective assistance of counsel at the punishment phase of his trial because his trial counsel failed to (1) object to that portion of the trial court's jury charge that misstated the law concerning appellant's eligibility for parole; (2) request that a number of terms and conditions of community supervision set out in article 42.12 of the Texas Code of Criminal Procedure be listed in the charge;[6] and (3) present a compelling defensive theory that appellant did not use or exhibit a deadly weapon during the commission of the offense.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* requires a two-step analysis whereby an appellant must show both that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's

unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id.; Vasquez v. State,* 830 S.W.2d 948, 949 (Tex. Crim.App.1992). *Strickland* defines reasonable probability as a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Id.*

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004); *Anderson v. State,* 193 S.W.3d 34, 39 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd). Where, as here, the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's determination of the ineffective assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *Anderson,* 193 S.W.3d at 39.

### Guilt Phase of Trial

#### Search Warrant and Return

■ In his first point of error, appellant argues that his trial counsel was ineffective because he failed to object to the admission into evidence of the search warrant and return. Appellant notes that prior to trial, his trial counsel had filed a written motion in limine seeking to preclude "[a]ny

---

4. *See* Tex.R. Evid. 508.

5. *See* Tex.Code Crim. Proc. Ann. art. 36.27 (Vernon 2006).

6. *See id.* art. 42.12 (Vernon 2006).

mention of the warrant or fruit thereof obtained to arrest [appellant] and search the house located at 6543 Ave. I without [appellant] having the right to cross[-]examine the witnesses which are the basis of said warrant." Outside the presence of the jury, trial counsel again articulated that he did not want any mention of the basis for the warrant without having the right to cross-examine the informant. Additionally, trial counsel explained to the trial court that he was concerned that police officers would allude to previous narcotics transactions between appellant and the informant.

During Officer Morales's testimony, the State offered the search and arrest warrant into evidence. Appellant's trial counsel objected, stating, "The only objection I have are the objections I previously stated, Your Honor, about the warrant and the information with the warrant." After noting that the exhibit did not contain the affidavit in support of the warrant, the trial court overruled the objection and the warrant was admitted into evidence.

■ Recitals contained in a search warrant and return are hearsay and are not admissible before the jury for any purpose, and their admission over objection is error. *Torres v. State*, 552 S.W.2d 821, 824 (Tex. Crim.App.1977). However, whether the error constitutes reversible error is determined by examining the facts of each case to see if the receipt of the instruments was harmful. *Id.*

During the hearing on the motion for new trial, appellant's trial counsel admitted that he had no tactical reason for not making a relevance or hearsay objection when the warrant was introduced. However, the evidence that appellant now complains of was corroborated in multiple instances by other admissible evidence at trial. Regardless of whether his trial counsel's failure to object to the admission of the search warrant fell below an objective standard of reasonableness, appellant has failed to show a reasonable probability that the results of the proceedings would have been different had trial counsel objected to the admission of the search warrant. Accordingly, we hold that the fact that appellant's trial counsel failed to object to the admission of the search warrant does not support a claim of ineffective assistance.

*Hearsay from Confidential Informant*

■ Appellant next argues that his trial counsel was ineffective because he failed to object to Officer Morales's testimony as to what the confidential informant told him on the grounds that it was inadmissible hearsay.

During the trial, when questioned by the State as to how he began his investigation of the location in question, Morales stated that he "[r]eceived information from a confidential informant," which he used to secure the search and arrest warrant. Morales "did a little investigation on the location and then conducted surveillance" over a period of several months.

In *Schaffer v. State*, the Court of Criminal Appeals noted that,

Frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." An arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct. The police officer, however, should not be permitted to relate historical aspects of the case, replete

with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted.

777 S.W.2d 111, 114–15 (Tex.Crim.App. 1989) (internal citations omitted).

Here, the testimony in question did not reveal the details of the information that the informant provided to Morales. Morales's reference to the confidential informant was merely a general description of possible criminality that provided an explanation for why Morales developed appellant as a suspect and later secured a warrant. *See Houston v. State*, 185 S.W.3d 917, 923 (Tex.App.-Austin 2006, pet. ref'd). If trial counsel had asserted a hearsay objection, the trial court would not have abused its discretion in overruling the objection. Accordingly, we hold that the fact that appellant's trial counsel did not object to Morales's testimony regarding what the confidential informant told him does not support a claim of ineffective assistance.

*Motion to Disclose*

█ Appellant next argues that his trial counsel was ineffective because he failed to file a motion to disclose the identity of the confidential informant. *See* Tex.R. Evid. 508. Appellant asserts that his trial counsel's "professed 'strategic' reasons for not seeking disclosure of the informant's identity [were] objectively unreasonable."

█ Generally, the State has a privilege to refuse to disclose the identity of a person who has furnished information relating to a possible violation of the law to a law enforcement officer. Tex.R. Evid. 508(a). The State's privilege is not absolute. *See id.* 508(c). The privilege does not apply in a criminal case (1) if the informer's identity has been voluntarily disclosed, (2) if the informer may be able to give testimony necessary to a fair determination of guilt or innocence, or (3) if the court is not satisfied that information

was obtained from an informer reasonably believed to be reliable. *Id.* A defendant has the threshold burden of demonstrating that the informant's identity must be disclosed. *Bodin v. State*, 807 S.W.2d 313, 318–19 (Tex.Crim.App.1991). The informant's potential testimony must significantly aid the defendant, and mere conjecture or supposition about possible relevancy is insufficient. *Id.*

During the hearing on the motion for new trial, appellant's trial counsel testified that one of the reasons that he did not file a motion to disclose the identity of the informant was that he felt that if the informant had been called to testify, he would have testified favorably for the State about other instances in which the informant had purchased narcotics from appellant. Trial counsel also explained that he did not think that appellant could meet the burden for requiring disclosure of the informant's identity. Trial counsel acknowledged that, based on his experience, if a trial court makes the determination that a defendant has met his burden under rule 508, instead of disclosing the identity of the informant, the State typically dismisses the case.

Here, the informant's identity was not voluntarily disclosed, and the evidence does not indicate that the informant was able to give testimony necessary to a fair determination of guilt. Nor does the record reveal that the trial court was not satisfied that the information obtained from the informant was reasonably reliable. Thus, trial counsel's testimony that he did not think he could meet his burden appears to be accurate. Moreover, even assuming that appellant could have sustained his burden in seeking disclosure, his trial counsel indicated his belief that the informant's testimony would be damaging to appellant. Accordingly, we hold that the fact that appellant's trial counsel did

not seek disclosure of the identity of the informant does not support a claim of ineffective assistance.

*Compliance with Article 36.27*

■ Appellant next argues that his trial counsel was ineffective because he failed to object when the trial court did not comply with the mandatory provisions of article 36.27 of the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 36.27 (Vernon 2006).

Article 36.27 provides that,

When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

*Id.*

During their deliberations at the guilt phase of the trial, the jury sent a note to the trial court, which stated,

We need explanation of the special issue toward the guns. Does it mean (1) that he used the guns during the arrest[?] or (2) that he was in possession of the guns? [or] (3) Did he use them during the time of his drug dealing?

The trial court replied on the same note, "Please refer to the Court's charge." Appellant contends that because the court reporter's record from that morning "does not reveal that the trial court accepted the jury's note, answered it on the record in the presence of the court reporter, sought an express waiver from [a]ppellant of the mandatory dictates of [article] 36.27, or that trial counsel was afforded an opportunity to either furnish a reply to the jury's question or object to the trial court's refusal to answer the jury's question," his trial counsel's failure to object constituted ineffective assistance.

During the hearing on the motion for new trial, appellant's trial counsel testified that when the jury sent out its note, he was downstairs in the courthouse and, by the time he returned to the courtroom, the trial court had already furnished an answer to the jury's questions. At the hearing, appellant argued that trial counsel should have requested that the trial court answer the questions by stating to the jury that in order to answer the special issue in the affirmative, it must find beyond a reasonable doubt that appellant "used those guns to facilitate the drug felony." The trial court explained that when the note came out from the jury, the trial court tried to locate appellant's trial counsel, who had been released to go to another court, but that trial counsel's associate was present and he and the trial court agreed on the response provided to the jury. Although, during the trial, appellant's trial counsel never on the record authorized his associate to act on appellant's behalf, trial counsel stated that the contract between

appellant and trial counsel provided that trial counsel's associate was permitted to act on appellant's behalf. Additionally, appellant's trial counsel further testified that he agreed with the trial court's response provided to the jury because appropriate instructions were included in the court's charge.

Appellant relies in part on *Williamson v. State* for the proposition that trial counsel's failure to preserve a claim that the trial court failed to comply with article 36.27 is deficient conduct. *See* 771 S.W.2d 601, 608 (Tex.App.-Dallas 1989, pet. ref'd).[7] In *Williamson,* while deliberating during the guilt phase of the trial, the jury sent out a note to the trial court asking, "Was the microwave positively identified as the one taken from the photo lab?" *Id.* at 604. The trial court replied to the note as follows,

> In reply to your above note you are instructed that the witness . . . testified that he compared the serial number from his records to the microwave taken by the police and that it was the one removed from his business.

*Id.* The court of appeals stated that the trial court's response also constituted an impermissible comment on the weight of the evidence and would have been reversible error. *Id.* at 608–09. That court held that the failure to object or offer a bill of exception was "an instance of deficient performance by trial counsel." *Id.* at 608. Here, however, the trial court's response did not comment on the weight of the evidence; it merely referred the jury to the court's charge.

More helpful is *Ash v. State*, where during deliberations the jury sent a note to the trial court asking the following,

We, the jury, request that [the trial court] clarify the definition of "serious bodily injury." We need to know if defendant's intend [sic] in the incident (with regard to an injury), or do we only need to consider the act or results of the act.

930 S.W.2d 192, 195–96 (Tex.App.-Dallas 1996, no pet.). The trial court responded by stating, "You are instructed that you have been given all of the law and instruction that this Court is, under the law, allowed to give you." *Id.* at 196. The court of appeals held that the trial court's response to the jury's note was not erroneous and that the defendant was not harmed. *See id.*

Here, the trial court's instruction to the jury to refer to the court's charge was not improper. Accordingly, we hold that the fact that appellant's trial counsel did not object to the trial court's response to the jury's question does not support a claim of ineffective assistance.

*Synergistic Effect*

Appellant further argues that the "synergistic effect of the deficient conduct here" presents "a breakdown in the adversarial process." However, as noted above, appellant has not demonstrated that any of the above acts and omissions made by his trial counsel amounted to a deficient performance or that there is a reasonable probability that the results of the proceeding would have been different. Accordingly, we hold that appellant's assertion of a synergistic effect of the above claimed deficiencies does not support a claim of ineffective assistance.

Having held that none of appellant's arguments above support a claim of ineffec-

---

7. In *Williamson,* the appellant claimed that the trial court failed to comply with both article 36.27 and article 36.28 of the Texas Code of Criminal Procedure. *See Williamson v. State,* 771 S.W.2d 601, 604 (Tex.App.-Dallas 1989, pet. ref'd); *see also* Tex.Code Crim. Proc. Ann. arts. 36.27, 36.28 (Vernon 2006).

tive assistance of counsel, we further hold that the trial court did not err in denying appellant's motion for new trial on the ground that his trial counsel's performance was deficient at the guilt stage of the trial. Accordingly, we overrule appellant's first point of error.

### Punishment Phase of Trial

#### Parole Law Jury Instruction

■ In his second point of error, appellant argues that his trial counsel was ineffective because he failed to object to a portion of the jury charge that misstated appellant's eligibility for parole. Appellant argues that because his trial counsel failed to object to the omission of the "statutorily-mandated phrase 'without consideration of any good conduct time [appellant] may earn' " from the court's charge in the punishment phase of the trial, his trial counsel's performance was deficient. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon 2006).[8] The State argues that because "good conduct time" was not available to appellant due to the jury's affirmative finding on the special issue regarding

appellant's use or exhibition of a deadly weapon during the commission of the offense, the "trial court's charge to the jury was entirely accurate, and there was no danger that the jurors might have considered the extent to which good conduct time might have been awarded to or forfeited by . . . appellant because the jurors were not told about good conduct time at all."

The instruction prescribed by section 4(a) of article 37.07 is required in cases in which the jury assesses punishment and the charged offense is listed in section 3g(a)(1) of article 42.12 of the Texas Code of Criminal Procedure or if the judgment contains an affirmative finding of the use of a deadly weapon. *Id.* arts. 37.07, § 4(a); 42.12 § 3g(a) (Vernon 2006). Because the jury found that appellant used or exhibited a deadly weapon during the commission of the offense or during the immediate flight therefrom, the trial court was required to provide the instruction prescribed in section 4(a). However, because the jury found that appellant used or exhibited a deadly weapon during the commission of

---

**8.** Section 4(a) of article 37.07 of the Texas Code of Criminal Procedure prescribes the following instruction:

Under the law applicable in this case, *the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitations. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*

It is *also* possible that the length of the time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, *without consideration of any good conduct time that he may earn. If the defendant*

*is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole.* Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law *and good conduct time* might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law *and good conduct time.* However, *you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.* You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon 2006) (emphasis added). Appellant complains that the trial court omitted the italicized portion of the above instruction from the jury charge.

the offense, he cannot receive a reduction, due to good conduct, in the time that he has to serve. TEX. GOV'T CODE ANN. § 508.149(a)(1) (Vernon 2004); TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2).

Here, the trial court omitted the portion of the instruction prescribed in section 4(a) related to good conduct time. Had his trial counsel objected to the omission of the mandatory language from the court's charge, and thus preserved error, appellant would need to show "some harm" on appeal. *See Bolden v. State,* 73 S.W.3d 428, 433 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (when a defendant sufficiently preserves error to omission of good conduct language, he must show "some harm" on appeal); *see also Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). "Some harm" means the error was calculated to injure the rights of the defendant. *Bolden,* 73 S.W.3d at 433; *Almanza,* 686 S.W.2d at 171.

The section 4(a) instruction informs a jury of how good conduct time combines with actual time served to determine parole eligibility. *Grigsby v. State,* 833 S.W.2d 573, 576 (Tex.App.-Dallas 1992, pet. ref'd). Texas courts have consistently recognized that the State, not the defendant, actually benefits from the parole and good time instructions prescribed in section 4(a), and that such instructions are designed to increase sentences assessed by juries. *Id.; Bolden,* 73 S.W.3d at 434.

Appellant does not identify any actual harm that he suffered as a result of the omission of a charge designed to increase the length of a sentence. *See Grigsby,* 833 S.W.2d at 576. Although appellant's trial counsel testified during the hearing on the motion for new trial that he had no tactical reason for not objecting to the omission of the mandatory language, the omission could be viewed as a strategic choice to preclude any speculation by the jury re-

garding good conduct time in appellant's case. Appellant has not shown that his trial counsel's failure to object to the omission of the good conduct time language fell below an objective standard of reasonableness, nor that but for his trial counsel's error, there is a reasonable probability that the results of the proceedings would have been different. Accordingly, we hold that the fact that appellant's trial counsel did not object to the portion of the jury charge that misstated appellant's eligibility for parole does not support a claim of ineffective assistance.

*Terms and Conditions of Community Supervision*

██ Appellant next argues that his trial counsel was ineffective because although the court's charge included the first nine conditions of community supervision set out in article 42.12, section 11(a) of the Texas Code of Criminal Procedure, trial counsel failed to request that any other applicable terms and conditions of community supervision be included in the court's charge. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (Vernon 2006). Appellant asserts that trial counsel "had no tactical reason for not asking that the following conditions of community supervision [be] included in the jury charge: (1) the defendant submit to testing for drugs or alcohol; (2) the defendant serve 180 days in the Harris County Jail, day for day; (3) the defendant submit to electronic monitoring; (4) the defendant perform not less than 320 nor more than 1000 hours of community service; and (5) the defendant make a one-time payment to Crime Stoppers."

██ A trial court is not required to submit the statutory terms of community supervision in the jury charge on punishment. *Id.; Croft v. State,* 148 S.W.3d 533, 539 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The failure to enumerate all of the terms and conditions is not considered

harmful to the accused or restrictive of the court's authority. *Wade v. State*, 951 S.W.2d 886, 893 (Tex.App.-Waco 1997, pet. ref'd). The absence of a complete list of all the statutory terms and conditions of community supervision in the charge does not necessarily constitute error. *See id.*

Even assuming that the failure to request other applicable terms and conditions of community supervision in the court's charge fell below an objective standard of reasonableness, we conclude that appellant has not made any showing that, but for any such error on the part of his trial counsel, there is a reasonable probability that the result of the proceedings would have been different. Accordingly, we hold that the fact that appellant's trial counsel did not request the inclusion of other applicable terms and conditions of community supervision in the court's charge does not support a claim of ineffective assistance.

*Defensive Theory on Deadly Weapon Issue*

Finally, appellant argues that his trial counsel was ineffective because he failed to present a compelling defensive theory on the special issue of whether appellant used or exhibited a deadly weapon, namely a firearm, during the commission of the offense or during the immediate flight therefrom. Appellant focuses his argument on the assertion that his trial counsel (1) during voir dire, failed to discuss the special issue with the venire and the venire's only exposure to the special issue resulted from questioning by the State; (2) during closing arguments, failed "to present myriad compelling arguments in support of this key issue"; and (3) never asked the jury "to find in [a]ppellant's favor on this issue."

■ In regard to his failure to question or instruct the venire on the special issue,

appellant's trial counsel, during the hearing on the motion for new trial, testified,

I had [the deadly weapon] issue in my voir dire prepared. The State addressed it. And I saw the feedback from the panel and when I do my voir dire, I do issues in terms of priorities. Depending on the feedback from the panel, I address those issues. And I saw their feedback when the State brought it up and I thought it was brought up appropriately and I put it at the bottom of my list as one of the last priorities because I wanted to talk about other issues.

Trial counsel further explained that his other primary concerns included discussing with the panel credibility issues with the witnesses as well as the panel's attitude toward narcotics.

Appellant also asserts that although his trial counsel, at the hearing on the motion for new trial, insisted that he did not "question of the venire because of the 'feedback' he got from them, he admitted that this 'feedback' consisted of only one member of the venire responding to the State's hypothetical," and that "[w]hile trial counsel did not want to get the venire 'excited about guns,' he admitted that he had no way of knowing what they were thinking about the guns or whether any or all of them could follow the law that the State had to prove beyond a reasonable doubt that [a]ppellant used the guns to facilitate the drug felony."

■ A defendant's trial counsel's articulated reason for declining to ask questions on a topic during voir dire—that the prosecution's questioning adequately covered the defense's concerns—can be a legitimate trial strategy under appropriate circumstances. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App.2005). Here, appellant's trial counsel explained that he felt that the State had discussed

the special issue with the venire and stated that he felt it appropriate to allocate his time during voir dire to other concerns including credibility issues with the witnesses as well as the panel's attitude toward narcotics. Thus, trial counsel articulated a reasonable strategy for not further questioning the venire regarding the special issue. Appellant has not shown that his trial counsel's failure to discuss the special issue with the venire fell below an objective standard of reasonableness.

■ In regard to appellant's assertion that his trial counsel failed "to present myriad compelling arguments in support of this key issue" and to ask the jury "to find in [a]ppellant's favor on this issue," we note that during his cross-examination of Officer Morales, appellant's trial counsel elicited testimony that appellant was not armed when he was arrested and had no guns in his vehicle, Morales did not submit the nine weapons seized, one of which was stolen, to the print lab to see if fingerprints could be recovered from them, and Morales made no attempt to determine to whom the guns belonged based on the guns' serial numbers. Moreover, from the record, it is clear that the overall strategy of appellant's trial counsel was to show that appellant did not live at the residence where the narcotics and weapons were found. After the jury had actually found appellant guilty of possession of the narcotics, his trial counsel could have concluded that any argument on the deadly weapon issue would have been, as demonstrated below, futile. Viewed in the context of trial counsel's entire representation, appellant has failed to show that his trial counsel's failure to articulate other defensive theories and explicitly request that the jury find in appellant's favor on the special issue fell below an objective standard of reasonableness.

Accordingly, we hold that appellant's claim that his trial counsel failed "to present a compelling defensive theory" on the special issue of whether appellant used or exhibited a deadly weapon, namely a firearm, during the commission of the offense or during the immediate flight therefrom does not support a claim of ineffective assistance.

Having held that none of appellant's arguments support a claim of ineffective assistance of counsel, we further hold that the trial court did not err in denying appellant's motion for new trial on the ground that his trial counsel's performance was deficient at the punishment stage of the trial. Accordingly, we overrule appellant's second point of error.

### Deadly Weapon

■ In his third and fourth points of error, appellant argues that the evidence is legally and factually insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense because appellant was not in the house when it was searched, his fingerprints were not found on the guns or in the bedroom where the guns were found, clothing and personal effects in the bedroom where the guns were found did not belong to him, three other people had access to the house, the guns were not loaded, he never admitted to owning the guns, his mere presence in the area where the guns were found was not enough to answer the special issue "yes," his knowledge that guns were present was not enough to answer the special issue "yes," and his simultaneous possession of the guns and narcotics was not enough to answer the special issue "yes."

■ We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of

fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005). We note that the trier of fact is the sole judge of the weight and credibility of the evidence. *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App.2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). We must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, i.e., that the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). We note that a jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determinations. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006).

 The deadly weapon finding is important in that it affects a defendant's eligibility for parole. *Coleman v. State,* 145 S.W.3d 649, 652 (Tex.Crim.App.2004). When applied to the special issue regarding the use or exhibition of a deadly weapon during the commission of a felony offense, for a legal sufficiency challenge, the question is whether a rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms facilitated the associated felony. *See Gale v. State,*

998 S.W.2d 221, 224 (Tex.Crim.App.1999). " '[U]sed ... a deadly weapon' during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose." *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim. App.1989). " '[E]xhibited a deadly weapon' means that the weapon was consciously shown or displayed during the commission of the offense." *Id.*

In support of his argument that the evidence is legally insufficient to support the jury's finding, appellant relies on *Wynn v. State,* 847 S.W.2d 357 (Tex.App.-Houston [1st Dist.] 1993), *aff'd on other grounds,* 864 S.W.2d 539 (Tex.Crim.App. 1993). In *Wynn,* a jury found that the defendant was guilty of possession with intent to deliver cocaine weighing at least 400 grams and that the defendant used or exhibited a deadly weapon during the commission of the offense. 847 S.W.2d at 358. Officers searched the house while the defendant was in a patrol car. *Id.* In addition to finding narcotics and other narcotics paraphernalia throughout the house, officers found two handguns under a blanket in a separate bedroom. *Id.* at 358–59. In the bedroom identified as the defendant's, the officers did not find any narcotics or firearms. *Id.* at 359. This Court held that the evidence was legally insufficient to sustain the jury's finding that the defendant used or exhibited a deadly weapon during the commission of the offense. *Id.* at 361. In doing so, we noted that the defendant was in a patrol car when the officers searched the house and was not within reach of the narcotics or a firearm, no narcotics were found in the defendant's bedroom, the officers did not find the defendant's fingerprints on the firearms or in the bedroom where the firearms were found, at least two people other than the defendant had access to the house, and the State did not determine who was the regis-

tered owner of the firearms. *See id.* at 360–61.

Since we decided *Wynn,* the Texas Court of Criminal Appeals has explained that a defendant's proximity to firearms at the time of a narcotics search is not dispositive. *Coleman,* 145 S.W.3d at 654. In *Coleman,* a jury found the defendant guilty of possession with intent to deliver cocaine weighing more than four grams and less than 200 grams, and PCP weighing at least 400 grams, and that the defendant used a deadly weapon, a firearm, during the commission of each offense. *Id.* at 649–50. Officers searched the defendant's two-bedroom house while the defendant remained in a patrol car. *Id.* at 650. The front bedroom contained a bed, dresser, television, and safe. *Id.* The back bedroom contained an entertainment center, weight set, and clothes and shoes piled onto the floor. *Id.* Inside the back bedroom, officers found empty vials typically used to sell PCP and a juice bottle containing PCP behind the entertainment center. *Id.* Inside the kitchen, officers discovered a small beaker-type glass containing crack cocaine. *Id.* at 651. Inside the dining room, officers recovered more empty vials and a large amount of powdered cocaine. *Id.* Inside the front bedroom, officers found a closed safe containing two large bottles of PCP, large amounts of money, jewelry, and the defendant's college student identification card. *Id.* Officers also found two pieces of unopened mail addressed to the defendant at that address, a 9–millimeter pistol, and a .22 rifle inside the front bedroom. *Id.* An assault rifle was also recovered, but the record did not disclose where it was found. *Id.* Additionally, the utilities at the house were registered in the defendant's name and the defendant told an interviewer at the jail that he lived alone in the house. *Id.*

The court held that because a rational jury could have found that the weapons recovered facilitated the defendant's possession and intended distribution of the narcotics, the evidence was legally sufficient to sustain the jury's finding that the defendant used a deadly weapon during the commission of the offenses. *Id.* at 655. The court specifically explained that it disagreed that *Wynn* stands for the proposition that, "where no individual is observed in actual physical control over the weapon, and where the weapon is found a significant distance from the controlled substance, then the evidence is not sufficient to support an affirmative finding of use or exhibition of a deadly weapon during the commission of an alleged narcotics offense." *Id.* at 653–54. The court distinguished *Wynn,* noting that in *Wynn* the guns and narcotics seized were found in a bedroom that did not belong to Wynn and that Wynn was found guilty as a party to the offense when, at that time, the State had to prove he "personally used a deadly weapon." *Id.* at 654.

Here, in contrast to *Wynn,* appellant was not found guilty as a party. Police officers recovered nine firearms, consisting of rifles, revolvers, and a shotgun in the bedroom located closest to the living room, in which the officers confiscated 353 grams of cocaine sitting on top of a scale, "small baggies" of cocaine inside a dresser, and "multikilo baggies" on the floor containing traces of cocaine. Throughout the house, officers also seized spoons and measuring cups with "caked-on" cocaine used to transfer narcotics, several other scales, and a drug ledger. Also in contrast to the defendant in *Wynn,* appellant's presence in the house was not linked to a single bedroom. *See* 847 S.W.2d at 360–61. Officer Morales testified that he had seen appellant at the house on several occasions while conducting surveillance. Inside the house, officers found pictures of appellant

and a xeroxed copy of his driver's license, listing the address as 6543 Avenue I, in a drawer next to "baggies of cocaine." Officers recovered three bills addressed to appellant at that address, and Morales testified that all of the bills at the house were in appellant's name. Appellant also told Dalton Francis, Jr., a pretrial services officer with Harris County, that he lived at the house and had been living there for about ten years.

As was the case in *Coleman*, this case is not about the mere simultaneous possession of narcotics and firearms. *See Coleman*, 145 S.W.3d at 657–58 (Cochran, J., concurring). It is about the operation of a narcotics distribution outlet, in which nine firearms were confiscated in a room adjacent to a significant quantity of cocaine. *See id.* Viewing all the evidence in the light most favorable to the jury's verdict, we conclude, in accordance with *Coleman*, that a rational trier of fact could have found beyond a reasonable doubt that the weapons recovered facilitated appellant's possession and intended distribution of the narcotics. *See id.* at 655. Accordingly, we hold that the evidence is legally sufficient to support the jury's finding that appellant used or exhibited a deadly weapon during the commission of the offense.

In regard to appellant's argument that the evidence is factually insufficient to support the jury's verdict, it is true that appellant's fingerprints were not found on the guns or in the bedroom where the guns were found and that the State presented no evidence that the guns were loaded. Also, appellant testified that he had been staying in the house for only one week and he was not aware that the residents of the house had several guns. However, the jury was free to disbelieve his testimony. In stark contrast to his testimony, as shown above, ample evidence connected appellant to the residence and, consequently, the narcotics and the firearms therein. Also, a photograph of eight of the nine firearms in question reveals that, like the presence of the large quantity of narcotics in the house, the presence of the firearms would be hard to miss. Moreover, we cannot conclude that a firearm must be actually loaded to facilitate the commission of an offense. We conclude, viewing the evidence neutrally, that the evidence is not so weak that the jury's finding is clearly wrong or manifestly unjust or that the proof in support of the jury's finding is against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is factually sufficient to support the jury's finding that appellant used or exhibited a deadly weapon during the commission of the offense.

We overrule appellant's third and fourth points of error.

### Charge Error

In his fifth and sixth points of error, appellant argues that he suffered egregious harm from the trial court's erroneous parole law jury charge and its failure to include in the jury charge all of the applicable terms and conditions of community supervision.

 In analyzing a jury charge issue, our first duty is to decide whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003). If we find error, we then analyze that error for harm. *Id.* When, as here, the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim.App.2004); *Almanza*, 686 S.W.2d at 171. Under the *Almanza* egregious harm standard, the record must show that a defendant has suffered actual, rather than

merely theoretical, harm from jury instruction error. *Almanza,* 686 S.W.2d at 174. Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State,* 86 S.W.3d 226, 227 (Tex.Crim. App.2002). To determine whether a defendant has sustained egregious harm from a non-objected-to instruction, we consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996).

Appellant first argues that he suffered egregious harm when the trial court omitted the statutorily-mandated phrase "without consideration of any good conduct time [appellant] may earn" from the court's charge in the punishment phase of the trial. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a). For the same reasons discussed in appellant's ineffective assistance of counsel claim, we conclude that appellant has failed to show egregious harm resulting from the trial court's failure to instruct the jury on "good conduct time" in regard to appellant's eligibility for parole. Accordingly, we hold that appellant has failed to show egregious harm resulting from the trial court's parole instruction.

Appellant next argues that he suffered egregious harm when the trial court's charge included the first nine conditions of community supervision set out in article 42.12, section 11(a) of the Texas Code of Criminal Procedure, "but did not include the following conditions: (1) the defendant submit to drug and alcohol testing; (2) the defendant serve 180 days in the Harris County Jail, day for day; (3) the defendant submit to electronic monitoring; (4) the defendant perform not less than 320 nor more than 1000 hours of community service; and (5) the defendant make a one-time payment to Crime Stoppers." For the same reasons discussed in appellant's ineffective assistance of counsel claim, we conclude that appellant has failed to show egregious harm resulting from the trial court's failure to instruct the jury on these other terms and conditions of community supervision. Accordingly, we hold that appellant has failed to show egregious harm resulting from the trial court's instruction regarding terms and conditions of community supervision.

We overrule appellant's fifth and sixth points of error.

### Conclusion

We affirm the judgment of the trial court.