Opinion issued December 18, 2008









     




In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00680-CR




LOUIS MENDEZ, Appellant

v.

STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court 
Harris County, Texas
Trial Court Cause No. 1098167




MEMORANDUM OPINION 

          A jury found appellant, Louis Mendez, guilty of the first-degree felony offense
of possession of marihuana in a usable quantity of more than 2,000 pounds.


 The jury
also found that appellant used or exhibited a deadly weapon, namely a firearm, during
the commission of the offense. The jury assessed punishment at 10 years in prison
and a $10.00 fine. In one issue, appellant challenges the affirmative deadly weapon
finding. 
          We affirm.
                                                        Background
          In the fall of 2006, the Drug Enforcement Agency suspected that a Houston
warehouse on West Road was being used to store illegal narcotics. The agency
installed a camera on a nearby light pole to monitor activities at the warehouse. On
December 27, 2006, DEA agents saw an “18-wheeler” truck and two cars enter the
warehouse. One of the cars was a gold Crown Victoria. The identity of the occupants
of the vehicles could not be determined from the video. 
          Suspecting that the activity indicated that illegal narcotics were about to be
moved, DEA agents contacted the Harris County Sheriff’s Department to assist in the
investigation. Later that night, Harris County Sheriff’s Department Deputy Graves
saw the 18-wheeler leave the warehouse. Deputy Graves noticed that the truck’s
driver had not turned on the headlights, and the deputy initiated a traffic stop. 
Appellant quickly pulled the 18-wheeler over, got out, and walked back toward
Deputy Graves’s marked patrol car. 
          Deputy Graves noticed that appellant appeared nervous and was sweating
heavily. Deputy Graves also noticed that appellant’s clothes were covered with white
and black powder and that appellant smelled strongly of marihuana. 
          Appellant stated that he was test driving the 18-wheeler for a friend. Deputy
Graves found the explanation implausible given the remote location and the time of
night. 
          After appellant consented to a search, Deputy Graves found a small amount of
marihuana in appellant’s pocket and arrested him. The K-9 unit arrived and did an
exterior check of the 18-wheeler. The dog “alerted” to narcotics inside the truck. 
Inside the truck’s cab, the officers found a vial containing cocaine. In the trailer
portion, the officers found bags of charcoal. 
          Additional units arrived, and the officers went to the warehouse. The officers
noticed that the gate to the warehouse was open and that the chain on the gate had
been cut. The officers approached the warehouse and found one of the exterior doors
ajar. 
          Upon entering the warehouse, the officers saw a gold colored Crown Victoria,
a generator, portable lights, and a forklift. The forklift was still warm indicating that
it had been used recently. In addition, the officers also saw numerous wooden crates. 
The crates contained marihuana and were covered with a white substance, thought to
be lyme. Like the truck, the warehouse contained bags of charcoal. The officers also
recovered a loaded “AR 15 rifle” from the warehouse.
          In total, the police recovered 501 bales of marihuana, weighing 13,760 pounds. 
The marihuana had an estimated street value of $22 million.
          The State charged appellant with possession of marihuana in a usable quantity
of more than 2,000 pounds. Although the indictment charged appellant as principal,
the court’s charge authorized the jury to convict appellant either as a principal or as
a party to offense. The jury returned a general verdict finding appellant guilty. The
charge also contained a special issue asking the jury to determine whether appellant
used a deadly weapon, namely a firearm, during the commission of the offense. The
jury responded affirmatively to the deadly weapon special issue.
Deadly Weapon Finding
          In one issue, appellant challenges the legal and factual sufficiency of the
evidence to support the jury’s affirmative deadly weapon finding. 
A.      Standards of Review
          A legal-sufficiency challenge requires us to view all the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could
have found all of the essential elements of the offense (or finding) beyond a
reasonable doubt. See Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005); Sanchez v. State, 243 S.W.3d 57, 71–72 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d). To determine whether the evidence is legally sufficient, we must
examine the totality of the circumstances. Vodochodsky, 158 S.W.3d at 509. 
Although our analysis considers all of the evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the fact-finder. King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
          In contrast, a factual sufficiency review requires us to view all of the evidence
in a neutral light and ask whether the jury was rationally justified in finding guilt (or
an affirmative finding) beyond a reasonable doubt. See Watson v. State, 204 S.W.3d
404, 415 (Tex. Crim. App. 2006). Evidence is factually insufficient (1) when the
evidence supporting the conviction is so weak that the verdict seems clearly wrong
and manifestly unjust, or (2) when the evidence supporting the conviction is
outweighed by the great weight and preponderance of the contrary evidence so as to
render the verdict clearly wrong and manifestly unjust. Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007); see Sanchez, 243 S.W.3d at 72.
          We cannot reverse when the greater weight and preponderance of the evidence
actually favors conviction. Roberts, 220 S.W.3d at 524. And we may not substitute
our judgment for that of the jury merely because we would have reached a different
result. See Watson, 204 S.W.3d at 414. Instead, the record must show some
objective basis for concluding that the great weight and preponderance of the
evidence contradicts the jury’s verdict. See id. at 417.
B.      Legal Principles: Deadly Weapon Finding
          An affirmative deadly weapon finding may be made when the State establishes,
inter alia, (1) that a deadly weapon was used or exhibited during the commission of
a felony offense or (2) that the defendant was a party to the offense and knew that a
deadly weapon would be used or exhibited. Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g(a)(2) (Vernon Supp. 2008). In this context, the word “use” typically means that
a deadly weapon must be “utilized, employed, or applied in order to achieve its
intended result ‘the commission of a felony offense or during immediate flight
therefrom.’”


 Coleman v. State, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004)
(quoting Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). “[U]se”
could mean “any employment of a deadly weapon, even simple possession, if such
possession facilitates the associated felony.” Id. In a narcotics possession case, the
Court of Criminal Appeals concluded that a rational trier of fact could determine that
a defendant “used” a firearm during the commission of the offense because the
firearm protected and facilitated the defendant’s care, custody, and management of
the narcotics. Patterson, 769 S.W.2d at 942. 
C.      Legal Sufficiency Analysis
          Here, the evidence demonstrated a connection between appellant, the
marihuana, and the criminal enterprise being conducted in the warehouse. Appellant
was covered with white and black powder, which corresponded to the lyme and
charcoal found in the warehouse. Testimony was given that these substances are
often used to mask the odor of marihuana. When he was stopped, appellant smelled
strongly of marihuana and had marihuana in his pocket. 
          Appellant’s friends testified that appellant had shown them photographs on his
cell phone of bales of marihuana similar to those found in the warehouse. Appellant’s
cell phone was found in the Crown Victoria. One of appellant’s friends also testified
that appellant told him that he worked at night unloading “dope.” Deputy Graves
testified that the forklift was still warm when the officers entered the warehouse,
indicating that it had been recently used. 
          The State also presented circumstantial evidence connecting appellant to the
firearm. The AR 15 rifle was found in the warehouse along with 13,760 pounds of
marihuana. Appellant had been in the warehouse shortly before the officers
recovered the firearm. The evidence showed that the inside of the warehouse had an
open design with no separating walls. The jury heard uncontroverted testimony that
narcotics traffickers commonly use firearms to protect their drug inventory. The AR
15 rifle was loaded and had one bullet in its chamber. 
          A receipt from a sporting goods store found inside the Crown Victoria showed
the purchase of multiple “boxes of 223 ammunition,” which is the type of ammunition
found in the AR 15 rifle. A video of the transaction obtained from the sporting goods
store shows appellant purchasing the ammunition on December 18, 2006—9 days
before his arrest. 
          From the evidence, a jury could have reasonably inferred that appellant had
been unloading marihuana at the warehouse. Although appellant’s ownership of the
AR 15 rifle was not positively shown, the jury also could have reasonably inferred
from the cumulative effect of the evidence that the AR 15 rifle, like the forklift,
served as a tool of appellant’s trade. See Sanchez v. State, 906 S.W.2d 176, 181 (Tex.
App.—Fort Worth 1995, pet. dismissed & pet. ref’d) (upholding deadly weapon
finding because cumulative effect of certain factors sufficient to support finding that
firearms facilitated the care, custody, and management of narcotics, even though
defendant not present during search of house and other occupants lived in house).
          Viewing the evidence in the light most favorable to the deadly weapon finding,
we conclude that a rational trier of fact could have found, beyond a reasonable doubt,
that appellant “used” the firearm to facilitate the possession of the marihuana. See
Gale v. State, 998 S.W.2d 221, 226 (Tex. Crim. App. 1999) (overruling legal
sufficiency challenge to affirmative deadly weapon finding when evidence showed
that unloaded weapons were found in close proximity to marihuana, ammunition was
found with weapons, and uncontroverted testimony showed that drug traffickers use
guns to protect drugs and drug proceeds); Moreno v. State, 978 S.W.2d 285, 289
(Tex. App.—Fort Worth 1998, no pet.) (holding that evidence showing cocaine was
found in basket in bedroom closet, guns were found next to basket, ammunition was
found next to guns, and appellant was found in bedroom with box containing cocaine
and cash, was legally sufficient to support finding appellant used deadly weapon). 
          We hold that the evidence is legally sufficient to support the deadly weapon
finding.
D.      Factual Sufficiency Analysis
          In conducting a factual-sufficiency review, we must discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          Appellant contends that the evidence did not show that he was aware that the
AR 15 rifle was in the warehouse or that it would be used for the commission of an
offense. Appellant asserts that no evidence shows that he was “in the proximity” of
the AR 15 rifle. 
          Officer Graves testified that the interior of the warehouse had an open design
with no walls. Officer Graves’s testimony suggested that the AR 15 rifle was found
near the warehouse’s entrance, in plain view. A large quantity of marihuana was also
found in the warehouse. Appellant had been in the warehouse shortly before the
officers conducted the search. Appellant was the last person seen leaving the
warehouse. The evidence also showed that appellant had recently purchased the same
type of ammunition that was found in the AR 15 rifle. From this evidence, the jury
could have reasonably inferred that appellant was not only aware of the rifle, but was
also aware that it was used to protect the narcotics in the warehouse. 
          Appellant also contends that nothing shows that he “simultaneously possessed
the gun found in the warehouse and the marihuana seized.” We disagree. In cases
based on circumstantial evidence, it is not required that all facts point to a defendant’s
guilt; it is sufficient if the combined and cumulative force of all of the incriminating
circumstances warrants the conclusion of guilt. See Courson v. State, 160 S.W.3d
125, 128 (Tex. App.—Fort Worth 2005, no pet.) (citing Johnson v. State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993)). As discussed in our legal sufficiency analysis, the
State presented evidence linking appellant to the marihuana, the criminal enterprise
in the warehouse, and the AR 15 rifle. Uncontroverted testimony was given that
firearms are often used in the drug trade to protect drug inventories. 
          Appellant points out that he “never mentioned weapons” to the police, was not
carrying a weapon when he was arrested, and had no criminal history involving
firearms. Appellant also points out that he did not own or lease the warehouse. Such
evidence may weigh against the deadly weapon finding but is not dispositive. Courts
have concluded that the absence of far more probative evidence is not determinative
of whether a defendant used or exhibited a deadly weapon. See, e.g., Coleman, 145
S.W.3d at 654 (stating that defendant’s proximity to guns at time of search is not
dispositive); Dimas v. State, 987 S.W.2d 152, 155 (Tex. App. Fort Worth—1999, pet.
ref’d) (noting that ownership of firearm is not necessary to find person “used or
exhibited” deadly weapon). 
          Moreover, a decision is not manifestly unjust merely because the jury resolved
conflicting views of the evidence in favor of the State. Cain v. State, 958 S.W.2d
404, 410 (Tex. Crim. App. 1997). Ultimately, it was for the jury to make credibility
assessments and to weigh the evidence in this case. As an appellate court, we do not
reweigh the evidence, but act to ensure the rationality of the fact finder. See Williams
v. State, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996). 
          Viewing all of the evidence in a neutral light, we conclude that the jury’s
deadly weapon finding is neither “clearly wrong and manifestly unjust” nor against
the great weight and preponderance of the evidence. We hold that the evidence is
factually sufficient to support the finding. See Smith v. State, 176 S.W.3d 907,
919–20 (Tex. App.—Dallas 2005, pet. ref’d) (holding evidence factually sufficient
in spite of appellant’s argument that evidence showed that he was not only occupant
of house where guns found and that guns not within his reach at time of seizure);
Dimas, 987 S.W.2d at 155 (overruling factual sufficiency challenge to deadly weapon
finding in case in which appellant asserted that evidence showed that he did not own
guns and did not have access to garage apartment where guns found).
          We overrule appellant’s sole issue.
 

Conclusion
          We affirm the judgment of the trial court.


 

                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).