NUMBER 13-09-00408-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

ROGELIO KIRBY, Appellant,


v.

 

THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court

of Nueces County, Texas.

 


 MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Yañez and Garza


 Memorandum Opinion by Chief Justice Valdez
 

 Appellant, Rogelio Kirby, was charged by indictment with aggravated robbery, a first-degree felony. See Tex. Penal Code Ann. § 29.03(a)-(b) (Vernon 2003). After a trial, a
Nueces County jury convicted Kirby of the underlying offense, and the trial court sentenced
him to twenty years' incarceration in the Institutional Division of the Texas Department of
Criminal Justice. (1) By two issues, Kirby argues that: (1) the trial court's finding that he used
a deadly weapon to commit the offense is not supported by legally sufficient evidence; and
(2) the trial court erred in refusing to charge the jury on the lesser-included offense of theft. 
We affirm.

I. Background


 Kirby was indicted with aggravated robbery pertaining to an incident that allegedly
transpired at a Wal-Mart store in Flour Bluff, Texas. See id. § 29.03(a). On December 10,
2008, Kirby was arrested for stealing twenty-one Slim Jim beef jerky sticks. Jesse M.
Garza, an employee of Wal-Mart who investigates loss prevention and shoplifting, recalled
seeing Kirby in an aisle in the store trying to conceal the beef jerky. Kirby began to exit the
store, and Garza followed and tried to talk to him. When Garza identified himself, Kirby got
"pretty vulgar" and stated, "You don't know who the 'F' I am" and "You want to know who
the fuck I am." Garza called for back-up on his phone. Garza testified that Kirby then took
out a pocket-knife and took two or three steps towards him and made "gestures" in a
menacing manner. Though he was about five yards away from Kirby, Garza took several
steps back and tried to "de-escalate the situation, because [he] saw the knife." Garza
noted that Kirby's actions during the confrontation made Garza very afraid for his safety,
as he believed that he could have been "cut, seriously hurt, or killed." 

 After he backed away, Garza saw Kirby flee the scene towards a field where there
is a Wells Fargo bank, a Goodwill store, and a rehabilitation building. When asked by the
prosecutor what Kirby was wearing on the night of the incident, Garza stated that "[h]e was
wearing a camouflage jacket, a green[-]hooded sweatshirt, hoodie. The pants was [sic]
kind of--kind of matched. I don't know if they were camo, or they may have been like a
beige color." About seven or ten minutes after the confrontation, Garza saw that Kirby was
brought back to the Wal-Mart store by police. Garza did not see Kirby wearing exactly the
same clothes as he wore during the confrontation, although Kirby was still wearing the
green-hooded sweatshirt. 

 On cross-examination, Garza testified that he did not see Kirby wearing gloves and
that the pocket knife was in Kirby's hands during the confrontation. Garza admitted that
he did not stop Kirby until Kirby left the store because Garza wanted to see if Kirby had
stolen something else from the store. Garza noted that he saw a patrol car chasing after
Kirby once Kirby fled the scene. After seeing Kirby's return to the store, Garza identified
a pair of camouflage pants and a pocket knife that police recovered as being used by Kirby
during the confrontation. Garza acknowledged that the confrontation and ensuing chase
occurred at 8:00 p.m. on the night in question when it was dark; however, Garza stated that
he could see because the area, including the adjacent field, was well lit.

 Michael Towne Jr., an employee at the Wal-Mart store, testified that he was working
on the night in question and was asked by Garza to follow Kirby once Kirby left the store. 
Towne recalled that Kirby was "wearing all camo," and Towne followed Kirby into a dark
alleyway. Towne testified that he observed Garza's encounter with Kirby and corroborated
Garza's testimony. Towne remembered Kirby screaming profanities at Garza, like "Do you
know who the fuck I am? Do you want to know who the fuck I am," and then Kirby taking
out a knife and making a jabbing motion towards Towne and Garza. Towne then saw Kirby
run past a Goodwill store, towards a chiropractic center. When Kirby was apprehended,
Towne saw that Kirby was wearing a green sweatshirt and surmised that Kirby "got rid of
the camo he was wearing." Towne then identified in open court the knife Kirby allegedly
used on the night in question.

 On cross-examination, Towne admitted that when Kirby turned and threatened him
and Garza, they were in a dimly-lit alleyway; however, Towne insisted that there was
enough light to see Kirby's face. Towne testified that when Kirby started yelling profanities
and advancing towards Towne and Garza with the knife, he thought, "Shit, let's get the fuck
out of here." Towne acknowledged that after he and Garza backed away, Kirby ran around
a corner and Towne and Garza lost sight of him. 

 David Lindner, an officer with the Nueces County Constable's Office, testified that
he responded to a call regarding an aggravated robbery at the Wal-Mart store. As he
approached the store, Officer Lindner saw Kirby traversing "the access road between
Lakeside and Rankin." Office Lindner then took Kirby into custody; however, before he
was handcuffed, Kirby took several beef jerky products out of his pocket and threw them
on the ground. Officer Lindner frisked Kirby but did not find anything else. 

 Later, Officer Lindner testified that a knife can be a deadly weapon because it "can
inflict serious bodily injury or death." Officer Lindner recalled that Kirby did not have an
identification card on his person at the time of arrest and that Kirby was spotted crossing
the median of a highway. 

 On cross-examination, Officer Lindner denied taking Kirby back to the Wal-Mart
store and finding a knife on Kirby's person. Officer Lindner testified that Kirby was
described as wearing camouflage pants and a green-hooded sweatshirt at the time of the
incident, but Kirby was not wearing camouflage pants at the time of the arrest. Officer
Lindner could not recall if Kirby was still wearing the green-hooded sweatshirt at the time
of the arrest. The only item that Kirby was wearing that matched the description provided
in the dispatch call was a green jacket. Officer Lindner admitted that Kirby was
apprehended approximately one-and-a-half to two minutes after the dispatch call was
received.

 David Mendoza, an officer with the Corpus Christi Police Department, also
responded to the dispatch call about the aggravated robbery at the Wal-Mart store. Officer
Mendoza testified that when Kirby was apprehended, he was wearing blue sweat pants
and a green hooded sweatshirt and that his pockets were full of beef jerky products. 
Officer Mendoza determined that the value of the beef jerky allegedly stolen by Kirby was
around $4. Officer Mendoza then collected the beef jerky products and returned to the
Wal-Mart store to interview Garza and Towne. Officer Mendoza noted that a knife can be
a deadly weapon if "you're using it to actually stab someone or cut someone." Officer
Mendoza also recounted that because Kirby was not observed wearing all of the clothing
that was described in the dispatch call, Lieutenant Thomas A. Nichols II decided to search
the area surrounding the store for the clothes and the knife. 

 Lieutenant Nichols stated that by the time he arrived at the scene, Kirby was already
in police custody. Lieutenant Nichols recalled that Kirby was not wearing camouflage
pants, nor did he have the knife described in the dispatch call; therefore, Lieutenant
Nichols began to search an area slightly west of the Wal-Mart store. He found "a pair of
camouflage pants, rolled behind an air-conditioning unit behind a chiropractic office that's
just west of the Goodwill [store], along the access road there. And inside those pants was
also a silver knife." Lieutenant Nichols then identified several photographic exhibits
depicting the pants and silver knife that were found on the night in question. Lieutenant
Nichols further testified that the lighting surrounding the Wal-Mart store was "[f]airly good" 
and that the lighting was sufficient to make out someone's face from more than fifteen or
twenty yards away. 

 On cross-examination, Lieutenant Nichols admitted that the knife found was not
illegal and did not exceed three-and-a-half inches in length. Lieutenant Nichols denied
seeing Kirby wearing gloves on the night in question and acknowledged that no fingerprints
were obtained from the knife. Lieutenant Nichols noted that it was futile to use the security
camera footage obtained by Wal-Mart regarding the incident outside because the footage
was of "very poor quality." He also stated that criminals often "double dress" to "throw off
law enforcement that might be looking for them." 

 After the State rested its case-in-chief, Kirby moved for a directed verdict, which the
trial court denied. Kirby did not put on any evidence in his defense. At the conclusion of
the trial, the jury convicted Kirby of aggravated robbery, and the trial court made a finding
that Kirby used a deadly weapon in the commission of the offense. See id. The trial court
sentenced Kirby to twenty years' imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. This appeal ensued. 

II. Legal Sufficiency of the Trial Court's Deadly Weapon Finding

 By his first issue, Kirby argues that the trial court erred in concluding as a matter of
law that he used a deadly weapon during the commission of the underlying offense. We
disagree.

A. Applicable Law

 "The inquiry on review of the legal sufficiency of the evidence to support a criminal
conviction is whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt after viewing the evidence in the light most favorable
to the prosecution." Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en
banc) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Cates v. State, 102 S.W.3d
735, 738 (Tex. Crim. App. 2003)). When a challenge is made to the legal sufficiency of a
deadly weapon finding, the reviewing court must determine whether the evidence
demonstrated that: (1) the object meets the statutory definition of a dangerous weapon;
(2) the deadly weapon was used or exhibited during the transaction from which the felony
conviction was obtained; and (3) other people were put in actual danger. See Drichas, 175
S.W.3d at 798; see also Mejia v. State, No. 13-08-00365-CR, 2010 Tex. App. LEXIS 2119,
at **20-21 (Tex. App.-Corpus Christi Mar. 25, 2010, no pet.) (mem. op., not designated for
publication).

 A defendant "'used . . . a deadly weapon' during the commission of the offense" if
the "deadly weapon was employed or utilized in order to achieve its purpose." Patterson
v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); Sanchez v. State, 243 S.W.3d 57,
72 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd). A deadly weapon finding may be made,
if otherwise supported by the evidence, regardless of whether any injury was inflicted. See
McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); Rogers v. State, 877 S.W.2d
498, 500 (Tex. App.-Fort Worth 1994, pet. ref'd).

 An object is a deadly weapon by usage if "in the manner of its use or intended use,"
the object "is capable of causing death or serious bodily injury." Tex. Penal Code Ann. §
1.07(a)(17)(B) (Vernon Supp. 2009); see McCain, 22 S.W.3d at 503. "Serious bodily
injury" is defined as "bodily injury that creates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the function
of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46). The State is not
required to show that the "use or intended use causes death or serious bodily injury," but
that the "use or intended use is capable of causing death or serious bodily injury." McCain,
22 S.W.3d at 503. 

 Although a knife is not a deadly weapon per se, a knife can be found to be a deadly
weapon based on the nature of its use or intended use. See Thomas v. State, 821 S.W.2d
616, 619-20 (Tex. Crim. App. 1991); Garcia v. State, 17 S.W.3d 1, 4 (Tex. App.-Houston
[1st Dist.] 1999, pet. ref'd); see also Cuvillier v. State, No. 13-99-662-CR, 2001 Tex. App.
LEXIS 4178, at *3 (Tex. App.-Corpus Christi June 21, 2001, no pet.) (mem. op., not
designated for publication). Several non-exclusive factors may be considered in
determining whether an object, such as a knife, is capable of causing death or serious
bodily injury: (1) the physical proximity between the victim and the object; (2) the threats
or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's
ability to inflict death or serious injury; and (5) the manner in which the defendant used the
weapon. Bailey v. State, 46 S.W.3d 487, 491-92 (Tex. App.-Corpus Christi 2001, pet.
ref'd). Police officers can be expert witnesses with respect to whether a deadly weapon
was used in the commission of an offense. See Tucker v. State, 274 S.W.3d 688, 692
(Tex. Crim. App. 2008) (citing Hawkins v. State, 605 S.W.2d 586, 588 (Tex. Crim. App.
1980)); see also English v. State, 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983) (holding
that either expert testimony or lay testimony may be sufficient to support a deadly-weapon
finding). 

B. Discussion

 Here, the evidence presented at trial weighs in favor of the deadly weapon finding,
according to the factors mentioned in Bailey. See 46 S.W.3d at 491-92. Both Garza and
Towne recalled seeing Kirby with a knife in his possession while making vulgar and
threatening comments. See id. Garza and Towne also remembered seeing Kirby make
jabbing and thrusting motions with the knife in their direction and they were only five yards
away from Kirby when he brandished the knife. See id. Once Garza and Towne stepped
back, Kirby fled the scene. Both Garza and Towne testified that they stepped away from
Kirby once the knife was exhibited because both were afraid they would be killed or
seriously injured. 

 When Kirby was arrested, police officers did not find a knife on Kirby's person. 
However, Lieutenant Nichols found a pair of camouflage pants that matched the
description provided by both Garza and Towne behind an air-conditioning unit of a nearby
chiropractor's office. Inside these camouflage pants was a silver knife, which witnesses
identified at trial as the knife Kirby used during the confrontation. Several law enforcement
officers testified that a knife can cause serious bodily injury or death if used to try to stab
someone. See Tucker, 274 S.W.3d at 692; English, 647 S.W.2d at 668-69; Hawkins, 605
S.W.2d at 588. Based on the foregoing, we conclude that, although the knife was not
found on Kirby's person when he was arrested, a reasonable fact-finder could have
concluded that: (1) Kirby used a knife during the commission of the offense; (2) Kirby tried
to hide the knife in the camouflage pants that were left behind the air-conditioning unit at
the chiropractor's office; and (3) the knife used by Kirby constituted a deadly weapon under
these circumstances. See Tex. Penal Code Ann. § 1.07(a)(17)(B); McCain, 22 S.W.3d at
503; Patterson, 769 S.W.2d at 941; see also Thomas, 821 S.W.2d at 619-20; Bailey, 46
S.W.3d at 491-92. Therefore, we hold that the trial court's deadly weapon finding is
supported by legally sufficient evidence. See Drichas, 175 S.W.3d at 798; McCain, 22
S.W.3d at 503; Patterson, 769 S.W.2d at 941; see also Sanchez, 243 S.W.3d at 72;
Rogers, 877 S.W.2d at 500. Accordingly, we overrule Kirby's first issue. 

III. Jury Instructions

 By his second issue, Kirby asserts that the trial court erred in refusing to submit an
instruction to the jury regarding theft. Specifically, Kirby contends that he could not have
been found guilty of aggravated robbery because he did not use a knife or any other deadly
weapon on the night in question, and because the theft offense had already been
completed. We disagree.

A. Applicable Law

 A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser
offense is a lesser-included offense of the charged offense, and (2) there is some evidence
in the record that would permit a jury rationally to find that if the defendant is guilty, he is
guilty only of the lesser offense. Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App.
2006); see Hall v. State, 225 S.W.3d 524, 534-37 (Tex. Crim. App. 2007). In the first step, the elements of the offense as alleged in the indictment are
compared to the statutory elements of the potential lesser-included offense. Hall, 225
S.W.3d at 535-36. This determination is a question of law and does not depend on the
evidence adduced at the trial. Id. at 535. If the greater offense may be committed in more
than one manner, the manner alleged will determine the availability of lesser-included
offenses. Id. at 531.

 If the first step is satisfied, a reviewing court then proceeds to determine if there is
some evidence that would permit a rational jury to find that the defendant is guilty of the
lesser offense, but not guilty of the greater. Id. at 536. Anything more than a scintilla of
evidence may be sufficient to entitle a defendant to a charge on the lesser offense. Id. "[I]t
is not enough that the jury may disbelieve crucial evidence pertaining to the greater
offense, but rather, there must be some evidence directly germane to the lesser-included
offense for the finder of fact to consider before an instruction on a lesser-included offense
is warranted." Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We review
all evidence presented at trial to make this determination. Rousseau v. State, 855 S.W.2d
666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of the lesser-included
offense, a jury charge must be given based on that evidence, "'whether produced by the
State or the defendant and whether it be strong, weak, unimpeached, or contradicted.'" 
Id. at 672 (quoting Bell v. State, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)). Thus, in
this case, an instruction on theft as a lesser-included offense of aggravated robbery is
required only if the record contains evidence which shows that if the defendant is guilty, he
is guilty of theft only. See Eldred v. State, 578 S.W.2d 721, 723 (Tex. Crim. App. 1979);
see also State v. Choice, Nos. 05-07-01037-CR, 05-07-01038-CR, 2008 Tex. App. LEXIS
5931, at *6 (Tex. App.-Dallas Aug. 7, 2008, no pet.).

B. Discussion

 A person commits aggravated robbery "if he commits robbery . . . and he . . . uses
or exhibits a deadly weapon . . . ." Tex. Penal Code Ann. § 29.03(a)(2). A person commits
robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control
of the property, he . . . intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death. Id. § 29.02 (Vernon 2003). "In the course of committing
theft" is defined as "conduct that occurs in an attempt to commit, during the commission,
or in immediate flight after the attempt or commission of theft." Id. § 29.01(1) (Vernon
2003). 

 Robbery requires a nexus between the assault and the theft. See Cooper v. State,
67 S.W.3d 221, 223 (Tex. Crim. App. 2002). However, "'[t]he actual commission of theft
is not a prerequisite to the commission of robbery; the gravamen of robbery is the
assaultive conduct and not the theft.'" Green v. State, 840 S.W.2d 394, 401 (Tex. Crim.
App. 1992) (quoting Crank v. State, 761 S.W.2d 328, 350 (Tex. Crim. App. 1988)); Sendejo
v. State, 953 S.W.2d 443, 452 (Tex. App.-Waco 1997, pet. ref'd). In other words, to show
a robbery, the evidence must show that the accused assaulted the victim in an attempt to
commit theft. See Green, 840 S.W.2d at 401.

 On appeal, Kirby argues that the charge should have contained an instruction on
theft. The record reflects that Kirby objected to the charge's exclusion of the theft
instruction, and that the trial court overruled his objection. Several Texas courts have held
that theft may be a lesser-included offense of aggravated robbery. See Jones v. State,
280 S.W.3d 294, 297 (Tex. App.-Amarillo 2007, pet. ref'd) (citing Hall, 225 S.W.3d at 535);
see also Brown v. State, Nos. 2-07-067-CR, 2-07-068-CR, 2008 Tex. App. LEXIS 3976,
at *6 (Tex. App.-Fort Worth May 29, 2008, pet. ref'd) (mem. op., not designated for
publication); Baines v. State, No. 2-04-146-CR, 2005 Tex. App. LEXIS 5575, at *6 (Tex.
App.-Fort Worth July 14, 2005, pet. ref'd) (mem. op., not designated for publication) (citing
Parr v. State, 658 S.W.2d 620, 622 (Tex. Crim. App. 1983) (noting that theft may be a
lesser-included offense of robbery under the facts of a particular case)); Moseby v. State,
No. 14-03-00428-CR, 2004 Tex. App. LEXIS 9166, at *4 (Tex. App.-Houston [14th Dist.]
Oct. 19, 2004, no pet.) (mem. op., not designated for publication) (citing Jacob v. State,
892 S.W.2d 905, 909 (Tex. Crim. App. 1995)). Assuming that theft is a lesser-included
offense of aggravated robbery under the facts in this case, we cannot say that any
evidence presented to the jury demonstrates that Kirby was guilty only of theft. See Hall,
225 S.W.3d at 536. 

 In the present case, both Garza and Towne testified that Kirby exhibited a knife and
made jabbing and thrusting motions towards them while screaming obscenities when
Garza and Towne confronted Kirby outside the Wal-Mart store. Kirby's use of the knife
made both Garza and Towne fearful of death or serious bodily injury, and law enforcement
witnesses testified that the knife was a deadly weapon based on Garza and Towne's
recollection of Kirby's use of the knife. Police later found twenty-one beef jerky products
in Kirby's pockets and a silver knife in a pair of camouflage pants that Kirby apparently took
off and hid once he fled from the crime scene. 

 Kirby appears to argue that because the jury could have disbelieved the testimony
of Garza and Towne, then the jury could have concluded that no knife was used in the
commission of the offense and, therefore, he was entitled to an instruction on theft. 
However, we first note that we have already concluded that there is legally sufficient
evidence to support the trial court's deadly weapon finding. In any event, we note that the
court of criminal appeals has specifically held that, "it is not enough that the jury may
disbelieve crucial evidence pertaining to the greater offense, but rather, there must be
some evidence directly germane to the lesser-included offense for the finder of fact to
consider before an instruction on a lesser-included offense is warranted." Hampton, 109
S.W.3d at 441. Here, both Garza and Towne testified that Kirby exhibited a knife and put
them in fear of imminent bodily injury or death while he was fleeing the Wal-Mart--where
he stole the beef jerky products. See Tex. Penal Code Ann. §§ 29.01(1), 29.02,
29.03(a)(2). There is no evidence demonstrating that Kirby may have been only guilty of
theft. See Hall, 225 S.W.3d at 536; Eldred, 578 S.W.2d at 723; see also Choice, 2008
Tex. App. LEXIS 5931, at *6. 

 Furthermore, to the extent that Kirby argues that the offense of theft was completed
when he put the beef jerk products in his pocket and that the jury should have been
instructed about theft, we direct Kirby to sections 29.01(1) and 29.02 of the penal code. 
See Tex. Penal Code Ann. §§ 29.01(1), 29.02. As noted earlier, section 29.02 provides
that a person commits the offense of robbery "if, in the course of committing theft . . . he
intentionally or knowingly threatens or places another in fear of imminent bodily injury or
death." Id. § 29.02. Section 29.01(1) defines "in the course of committing theft" as
"conduct that occurs in an attempt to commit, during the commission, or in immediate flight
after the attempt or commission of theft." Id. § 29.01(1) (emphasis added). It is undisputed
that Kirby was confronted by Garza and Towne while Kirby was fleeing the Wal-Mart. In
applying sections 29.01(1) and 29.02 of the penal code, the scope of the offense is not
isolated on solely the theft that occurred inside the Wal-Mart; instead, Kirby's actions
constituted an ongoing robbery-oriented offense rather than a theft offense. See id. §§
29.01(1), 29.02. 

 Because there is no evidence demonstrating that Kirby may have been only guilty
of theft, and because the offense constituted an ongoing robbery-oriented offense, we hold
that the trial court did not err in refusing to include an instruction on theft in the jury charge. 
See Hall, 225 S.W.3d at 534-37; see also Guzman, 188 S.W.3d at 188. Accordingly, we
overrule Kirby's second issue. 

IV. Conclusion

 Having overruled both of Kirby's issues, we affirm the judgment of the trial court.

 ________________________

 ROGELIO VALDEZ

 Chief Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

31st day of August, 2010. 


 
1. The indictment included a paragraph describing Kirby's prior felony conviction for indecency with a
child by exposure on March 8, 1999. During the punishment phase, Kirby pleaded "true" to the enhancement
paragraph, and the trial court found the paragraph to be true; thus, Kirby was punished according to the
habitual felony offender statute. See Tex. Penal Code Ann. § 12.42(c)(1) (Vernon Supp. 2009) (providing that
"[i]f it is shown on the trial of a first-degree felony that the defendant has been once before convicted of a
felony, on conviction he shall be punished by imprisonment . . . for life, or for any term of not more than 99
years or less than 15 years.").