

NUMBER 13-09-00408-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROGELIO KIRBY,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

### On appeal from the 319th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Garza
Memorandum Opinion by Chief Justice Valdez**

Appellant, Rogelio Kirby, was charged by indictment with aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03(a)-(b) (Vernon 2003). After a trial, a Nueces County jury convicted Kirby of the underlying offense, and the trial court sentenced him to twenty years' incarceration in the Institutional Division of the Texas Department of

Criminal Justice.[1]  By two issues, Kirby argues that:  (1) the trial court's finding that he used a deadly weapon to commit the offense is not supported by legally sufficient evidence; and (2) the trial court erred in refusing to charge the jury on the lesser-included offense of theft. We affirm.

## I. BACKGROUND

Kirby was indicted with aggravated robbery pertaining to an incident that allegedly transpired at a Wal-Mart store in Flour Bluff, Texas.  *See id.* § 29.03(a).  On December 10, 2008, Kirby was arrested for stealing twenty-one Slim Jim beef jerky sticks.  Jesse M. Garza, an employee of Wal-Mart who investigates loss prevention and shoplifting, recalled seeing Kirby in an aisle in the store trying to conceal the beef jerky.  Kirby began to exit the store, and Garza followed and tried to talk to him.  When Garza identified himself, Kirby got "pretty vulgar" and stated, "You don't know who the 'F' I am" and "You want to know who the fuck I am."  Garza called for back-up on his phone.  Garza testified that Kirby then took out a pocket-knife and took two or three steps towards him and made "gestures" in a menacing manner.  Though he was about five yards away from Kirby, Garza took several steps back and tried to "de-escalate the situation, because [he] saw the knife."  Garza noted that Kirby's actions during the confrontation made Garza very afraid for his safety, as he believed that he could have been "cut, seriously hurt, or killed."

After he backed away, Garza saw Kirby flee the scene towards a field where there

---

[1] The indictment included a paragraph describing Kirby's prior felony conviction for indecency with a child by exposure on March 8, 1999.  During the punishment phase, Kirby pleaded "true" to the enhancement paragraph, and the trial court found the paragraph to be true; thus, Kirby was punished according to the habitual felony offender statute.  *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (Vernon Supp. 2009) (providing that "[i]f it is shown on the trial of a first-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 15 years.").

is a Wells Fargo bank, a Goodwill store, and a rehabilitation building. When asked by the prosecutor what Kirby was wearing on the night of the incident, Garza stated that "[h]e was wearing a camouflage jacket, a green[-]hooded sweatshirt, hoodie. The pants was [sic] kind of—kind of matched. I don't know if they were camo, or they may have been like a beige color." About seven or ten minutes after the confrontation, Garza saw that Kirby was brought back to the Wal-Mart store by police. Garza did not see Kirby wearing exactly the same clothes as he wore during the confrontation, although Kirby was still wearing the green-hooded sweatshirt.

On cross-examination, Garza testified that he did not see Kirby wearing gloves and that the pocket knife was in Kirby's hands during the confrontation. Garza admitted that he did not stop Kirby until Kirby left the store because Garza wanted to see if Kirby had stolen something else from the store. Garza noted that he saw a patrol car chasing after Kirby once Kirby fled the scene. After seeing Kirby's return to the store, Garza identified a pair of camouflage pants and a pocket knife that police recovered as being used by Kirby during the confrontation. Garza acknowledged that the confrontation and ensuing chase occurred at 8:00 p.m. on the night in question when it was dark; however, Garza stated that he could see because the area, including the adjacent field, was well lit.

Michael Towne Jr., an employee at the Wal-Mart store, testified that he was working on the night in question and was asked by Garza to follow Kirby once Kirby left the store. Towne recalled that Kirby was "wearing all camo," and Towne followed Kirby into a dark alleyway. Towne testified that he observed Garza's encounter with Kirby and corroborated Garza's testimony. Towne remembered Kirby screaming profanities at Garza, like "Do you know who the fuck I am? Do you want to know who the fuck I am," and then Kirby taking

3

out a knife and making a jabbing motion towards Towne and Garza. Towne then saw Kirby run past a Goodwill store, towards a chiropractic center. When Kirby was apprehended, Towne saw that Kirby was wearing a green sweatshirt and surmised that Kirby "got rid of the camo he was wearing." Towne then identified in open court the knife Kirby allegedly used on the night in question.

On cross-examination, Towne admitted that when Kirby turned and threatened him and Garza, they were in a dimly-lit alleyway; however, Towne insisted that there was enough light to see Kirby's face. Towne testified that when Kirby started yelling profanities and advancing towards Towne and Garza with the knife, he thought, "Shit, let's get the fuck out of here." Towne acknowledged that after he and Garza backed away, Kirby ran around a corner and Towne and Garza lost sight of him.

David Lindner, an officer with the Nueces County Constable's Office, testified that he responded to a call regarding an aggravated robbery at the Wal-Mart store. As he approached the store, Officer Lindner saw Kirby traversing "the access road between Lakeside and Rankin." Office Lindner then took Kirby into custody; however, before he was handcuffed, Kirby took several beef jerky products out of his pocket and threw them on the ground. Officer Lindner frisked Kirby but did not find anything else.

Later, Officer Lindner testified that a knife can be a deadly weapon because it "can inflict serious bodily injury or death." Officer Lindner recalled that Kirby did not have an identification card on his person at the time of arrest and that Kirby was spotted crossing the median of a highway.

On cross-examination, Officer Lindner denied taking Kirby back to the Wal-Mart store and finding a knife on Kirby's person. Officer Lindner testified that Kirby was

4

described as wearing camouflage pants and a green-hooded sweatshirt at the time of the incident, but Kirby was not wearing camouflage pants at the time of the arrest. Officer Lindner could not recall if Kirby was still wearing the green-hooded sweatshirt at the time of the arrest. The only item that Kirby was wearing that matched the description provided in the dispatch call was a green jacket. Officer Lindner admitted that Kirby was apprehended approximately one-and-a-half to two minutes after the dispatch call was received.

David Mendoza, an officer with the Corpus Christi Police Department, also responded to the dispatch call about the aggravated robbery at the Wal-Mart store. Officer Mendoza testified that when Kirby was apprehended, he was wearing blue sweat pants and a green hooded sweatshirt and that his pockets were full of beef jerky products. Officer Mendoza determined that the value of the beef jerky allegedly stolen by Kirby was around $4. Officer Mendoza then collected the beef jerky products and returned to the Wal-Mart store to interview Garza and Towne. Officer Mendoza noted that a knife can be a deadly weapon if "you're using it to actually stab someone or cut someone." Officer Mendoza also recounted that because Kirby was not observed wearing all of the clothing that was described in the dispatch call, Lieutenant Thomas A. Nichols II decided to search the area surrounding the store for the clothes and the knife.

Lieutenant Nichols stated that by the time he arrived at the scene, Kirby was already in police custody. Lieutenant Nichols recalled that Kirby was not wearing camouflage pants, nor did he have the knife described in the dispatch call; therefore, Lieutenant Nichols began to search an area slightly west of the Wal-Mart store. He found "a pair of camouflage pants, rolled behind an air-conditioning unit behind a chiropractic office that's

5

just west of the Goodwill [store], along the access road there.  And inside those pants was also a silver knife."  Lieutenant Nichols then identified several photographic exhibits depicting the pants and silver knife that were found on the night in question.  Lieutenant Nichols further testified that the lighting surrounding the Wal-Mart store was "[f]airly good" and that the lighting was sufficient to make out someone's face from more than fifteen or twenty yards away.

On cross-examination, Lieutenant Nichols admitted that the knife found was not illegal and did not exceed three-and-a-half inches in length.  Lieutenant Nichols denied seeing Kirby wearing gloves on the night in question and acknowledged that no fingerprints were obtained from the knife.  Lieutenant Nichols noted that it was futile to use the security camera footage obtained by Wal-Mart regarding the incident outside because the footage was of "very poor quality."  He also stated that criminals often "double dress" to "throw off law enforcement that might be looking for them."

After the State rested its case-in-chief, Kirby moved for a directed verdict, which the trial court denied.  Kirby did not put on any evidence in his defense.  At the conclusion of the trial, the jury convicted Kirby of aggravated robbery, and the trial court made a finding that Kirby used a deadly weapon in the commission of the offense.  *See id.*  The trial court sentenced Kirby to twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  This appeal ensued.

## II. LEGAL SUFFICIENCY OF THE TRIAL COURT'S DEADLY WEAPON FINDING

By his first issue, Kirby argues that the trial court erred in concluding as a matter of law that he used a deadly weapon during the commission of the underlying offense.  We disagree.

6

## A.    Applicable Law

"The inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution."  *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)).  When a challenge is made to the legal sufficiency of a deadly weapon finding, the reviewing court must determine whether the evidence demonstrated that:  (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were put in actual danger.  *See Drichas*, 175 S.W.3d at 798; *see also Mejia v. State*, No. 13-08-00365-CR, 2010 Tex. App. LEXIS 2119, at **20-21 (Tex. App.–Corpus Christi Mar. 25, 2010, no pet.) (mem. op., not designated for publication).

A defendant "'used . . . a deadly weapon' during the commission of the offense" if the "deadly weapon was employed or utilized in order to achieve its purpose."  *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); *Sanchez v. State*, 243 S.W.3d 57, 72 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd).  A deadly weapon finding may be made, if otherwise supported by the evidence, regardless of whether any injury was inflicted.  *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.–Fort Worth 1994, pet. ref'd).

An object is a deadly weapon by usage if "in the manner of its use or intended use," the object "is capable of causing death or serious bodily injury."  TEX. PENAL CODE ANN. §

7

1.07(a)(17)(B) (Vernon Supp. 2009); *see McCain*, 22 S.W.3d at 503. "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). The State is not required to show that the "use or intended use causes death or serious bodily injury," but that the "use or intended use is capable of causing death or serious bodily injury." *McCain*, 22 S.W.3d at 503.

Although a knife is not a deadly weapon per se, a knife can be found to be a deadly weapon based on the nature of its use or intended use. *See Thomas v. State*, 821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991); *Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd); *see also Cuvillier v. State*, No. 13-99-662-CR, 2001 Tex. App. LEXIS 4178, at *3 (Tex. App.–Corpus Christi June 21, 2001, no pet.) (mem. op., not designated for publication). Several non-exclusive factors may be considered in determining whether an object, such as a knife, is capable of causing death or serious bodily injury: (1) the physical proximity between the victim and the object; (2) the threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Bailey v. State*, 46 S.W.3d 487, 491-92 (Tex. App.–Corpus Christi 2001, pet. ref'd). Police officers can be expert witnesses with respect to whether a deadly weapon was used in the commission of an offense. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008) (citing *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. 1980)); *see also English v. State*, 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983) (holding that either expert testimony or lay testimony may be sufficient to support a deadly-weapon

finding).

**B.      Discussion**

Here, the evidence presented at trial weighs in favor of the deadly weapon finding, according to the factors mentioned in *Bailey*.  *See* 46 S.W.3d at 491-92.  Both Garza and Towne recalled seeing Kirby with a knife in his possession while making vulgar and threatening comments.  *See id.*  Garza and Towne also remembered seeing Kirby make jabbing and thrusting motions with the knife in their direction and they were only five yards away from Kirby when he brandished the knife.  *See id.*  Once Garza and Towne stepped back, Kirby fled the scene.  Both Garza and Towne testified that they stepped away from Kirby once the knife was exhibited because both were afraid they would be killed or seriously injured.

When Kirby was arrested, police officers did not find a knife on Kirby's person.  However, Lieutenant Nichols found a pair of camouflage pants that matched the description provided by both Garza and Towne behind an air-conditioning unit of a nearby chiropractor's office.  Inside these camouflage pants was a silver knife, which witnesses identified at trial as the knife Kirby used during the confrontation.  Several law enforcement officers testified that a knife can cause serious bodily injury or death if used to try to stab someone.  *See Tucker*, 274 S.W.3d at 692; *English*, 647 S.W.2d at 668-69; *Hawkins*, 605 S.W.2d at 588.  Based on the foregoing, we conclude that, although the knife was not found on Kirby's person when he was arrested, a reasonable fact-finder could have concluded that:  (1) Kirby used a knife during the commission of the offense; (2) Kirby tried to hide the knife in the camouflage pants that were left behind the air-conditioning unit at the chiropractor's office; and (3) the knife used by Kirby constituted a deadly weapon under

these circumstances. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *McCain*, 22 S.W.3d at 503; *Patterson*, 769 S.W.2d at 941; *see also Thomas*, 821 S.W.2d at 619-20; *Bailey*, 46 S.W.3d at 491-92. Therefore, we hold that the trial court's deadly weapon finding is supported by legally sufficient evidence. *See Drichas*, 175 S.W.3d at 798; *McCain*, 22 S.W.3d at 503; *Patterson*, 769 S.W.2d at 941; *see also Sanchez*, 243 S.W.3d at 72; *Rogers*, 877 S.W.2d at 500. Accordingly, we overrule Kirby's first issue.

### III. JURY INSTRUCTIONS

By his second issue, Kirby asserts that the trial court erred in refusing to submit an instruction to the jury regarding theft. Specifically, Kirby contends that he could not have been found guilty of aggravated robbery because he did not use a knife or any other deadly weapon on the night in question, and because the theft offense had already been completed. We disagree.

### A. Applicable Law

A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser offense is a lesser-included offense of the charged offense, and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *see Hall v. State*, 225 S.W.3d 524, 534-37 (Tex. Crim. App. 2007).

In the first step, the elements of the offense as alleged in the indictment are compared to the statutory elements of the potential lesser-included offense. *Hall*, 225 S.W.3d at 535-36. This determination is a question of law and does not depend on the evidence adduced at the trial. *Id.* at 535. If the greater offense may be committed in more

10

than one manner, the manner alleged will determine the availability of lesser-included offenses. *Id.* at 531.

If the first step is satisfied, a reviewing court then proceeds to determine if there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense, but not guilty of the greater. *Id.* at 536. Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on the lesser offense. *Id.* "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We review all evidence presented at trial to make this determination. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of the lesser-included offense, a jury charge must be given based on that evidence, "'whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted.'" *Id.* at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)). Thus, in this case, an instruction on theft as a lesser-included offense of aggravated robbery is required only if the record contains evidence which shows that if the defendant is guilty, he is guilty of theft only. *See Eldred v. State*, 578 S.W.2d 721, 723 (Tex. Crim. App. 1979); *see also State v. Choice*, Nos. 05-07-01037-CR, 05-07-01038-CR, 2008 Tex. App. LEXIS 5931, at *6 (Tex. App.–Dallas Aug. 7, 2008, no pet.).

## B.     Discussion

A person commits aggravated robbery "if he commits robbery . . . and he . . . uses or exhibits a deadly weapon . . . ." Tex. Penal Code Ann. § 29.03(a)(2). A person commits

11

robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02 (Vernon 2003). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1) (Vernon 2003).

Robbery requires a nexus between the assault and the theft. *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002). However, "'[t]he actual commission of theft is not a prerequisite to the commission of robbery; the gravamen of robbery is the assaultive conduct and not the theft.'" *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992) (quoting *Crank v. State*, 761 S.W.2d 328, 350 (Tex. Crim. App. 1988)); *Sendejo v. State*, 953 S.W.2d 443, 452 (Tex. App.–Waco 1997, pet. ref'd). In other words, to show a robbery, the evidence must show that the accused assaulted the victim in an attempt to commit theft. *See Green*, 840 S.W.2d at 401.

On appeal, Kirby argues that the charge should have contained an instruction on theft. The record reflects that Kirby objected to the charge's exclusion of the theft instruction, and that the trial court overruled his objection. Several Texas courts have held that theft may be a lesser-included offense of aggravated robbery. *See Jones v. State*, 280 S.W.3d 294, 297 (Tex. App.–Amarillo 2007, pet. ref'd) (citing *Hall,* 225 S.W.3d at 535); *see also Brown v. State*, Nos. 2-07-067-CR, 2-07-068-CR, 2008 Tex. App. LEXIS 3976, at *6 (Tex. App.–Fort Worth May 29, 2008, pet. ref'd) (mem. op., not designated for publication); *Baines v. State*, No. 2-04-146-CR, 2005 Tex. App. LEXIS 5575, at *6 (Tex. App.–Fort Worth July 14, 2005, pet. ref'd) (mem. op., not designated for publication) (citing

12

*Parr v. State*, 658 S.W.2d 620, 622 (Tex. Crim. App. 1983) (noting that theft may be a lesser-included offense of robbery under the facts of a particular case)); *Moseby v. State*, No. 14-03-00428-CR, 2004 Tex. App. LEXIS 9166, at *4 (Tex. App.–Houston [14th Dist.] Oct. 19, 2004, no pet.) (mem. op., not designated for publication) (citing *Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995)). Assuming that theft is a lesser-included offense of aggravated robbery under the facts in this case, we cannot say that any evidence presented to the jury demonstrates that Kirby was guilty only of theft. *See Hall*, 225 S.W.3d at 536.

In the present case, both Garza and Towne testified that Kirby exhibited a knife and made jabbing and thrusting motions towards them while screaming obscenities when Garza and Towne confronted Kirby outside the Wal-Mart store. Kirby's use of the knife made both Garza and Towne fearful of death or serious bodily injury, and law enforcement witnesses testified that the knife was a deadly weapon based on Garza and Towne's recollection of Kirby's use of the knife. Police later found twenty-one beef jerky products in Kirby's pockets and a silver knife in a pair of camouflage pants that Kirby apparently took off and hid once he fled from the crime scene.

Kirby appears to argue that because the jury could have disbelieved the testimony of Garza and Towne, then the jury could have concluded that no knife was used in the commission of the offense and, therefore, he was entitled to an instruction on theft. However, we first note that we have already concluded that there is legally sufficient evidence to support the trial court's deadly weapon finding. In any event, we note that the court of criminal appeals has specifically held that, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be

13

some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton*, 109 S.W.3d at 441. Here, both Garza and Towne testified that Kirby exhibited a knife and put them in fear of imminent bodily injury or death while he was fleeing the Wal-Mart—where he stole the beef jerky products. *See* TEX. PENAL CODE ANN. §§ 29.01(1), 29.02, 29.03(a)(2). There is no evidence demonstrating that Kirby may have been only guilty of theft. *See Hall*, 225 S.W.3d at 536; *Eldred*, 578 S.W.2d at 723; *see also Choice*, 2008 Tex. App. LEXIS 5931, at *6.

Furthermore, to the extent that Kirby argues that the offense of theft was completed when he put the beef jerk products in his pocket and that the jury should have been instructed about theft, we direct Kirby to sections 29.01(1) and 29.02 of the penal code. *See* TEX. PENAL CODE ANN. §§ 29.01(1), 29.02. As noted earlier, section 29.02 provides that a person commits the offense of robbery "if, in the course of committing theft . . . he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02. Section 29.01(1) defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, *or in immediate flight after the attempt or commission of theft*." *Id.* § 29.01(1) (emphasis added). It is undisputed that Kirby was confronted by Garza and Towne while Kirby was fleeing the Wal-Mart. In applying sections 29.01(1) and 29.02 of the penal code, the scope of the offense is not isolated on solely the theft that occurred inside the Wal-Mart; instead, Kirby's actions constituted an ongoing robbery-oriented offense rather than a theft offense. *See id.* §§ 29.01(1), 29.02.

Because there is no evidence demonstrating that Kirby may have been only guilty

of theft, and because the offense constituted an ongoing robbery-oriented offense, we hold that the trial court did not err in refusing to include an instruction on theft in the jury charge. *See Hall*, 225 S.W.3d at 534-37; *see also Guzman*, 188 S.W.3d at 188. Accordingly, we overrule Kirby's second issue.

## IV. CONCLUSION

Having overruled both of Kirby's issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of August, 2010.