

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NOS. 02-10-00253-CR**
**02-10-00254-CR**
**02-10-00255-CR**
**02-10-00256-CR**

NICOLAS VELAZQUEZ                                    APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Nicolas Velazquez appeals four prison sentences assessed by a

jury following convictions of aggravated kidnapping, burglary of a habitation, and

---

[1]*See* Tex. R. App. P. 47.4.

two aggravated assaults. In one point, Appellant contends that the trial court reversibly erred by denying his punishment-phase request to instruct the jury that if it recommended probation, the trial court could impose various probationary terms and conditions designed to protect or restore the community or victim.[2] We affirm.

## II. Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence reveals that, in February 2009, Appellant sat in his car surveilling the apartment of his estranged wife, Maria Guzman, where she lived with their three children, all of whom were under the age of ten. The next morning, he confronted Guzman as she returned from the grocery store. As Appellant implored Guzman to speak with him, he suddenly noticed Jose Menchaca, Guzman's boyfriend, walking toward them, holding grocery bags in both hands. Appellant instantly pulled out a large kitchen knife from under his jacket, stepped toward Menchaca, and stabbed him in the arm, causing him to fall to the ground. When Guzman attempted to push Appellant away from Menchaca, Appellant slashed the top of her head with the knife. When Menchaca pushed Appellant away from Guzman, Appellant stabbed him on his left side. Appellant and Menchaca continued fighting. When Menchaca tried to grab Appellant's knife, Appellant pulled out a

---

[2]Appellant raised an additional point in his brief but withdrew it from review in a letter to the court.

2

pocket knife and stabbed Menchaca with one or both knives approximately twenty times, wounding his face, arms, sides, abdomen, and back.

As Guzman screamed for help, Guzman and Appellant's eight-year-old daughter came out of the apartment, and when Appellant saw her, he released the kitchen knife to Guzman. Guzman threw the knife down and ordered their daughter inside. As the daughter headed back toward the apartment, Appellant ran after her. Afraid for her children, Guzman raced ahead of Appellant. Although she reached the door first and tried to close it, Appellant pushed Guzman inside. Appellant then entered, locked, and chained the door behind him.

A security guard approached the apartment and heard Guzman plead with Appellant to let her go and not hurt her. He also heard her say that she did not want to be with him and that he should let her live her life. The guard heard Appellant reply, "If you aren't with me, you aren't going to be with anybody else." When the guard ordered Appellant to let Guzman go, Appellant shouted, "It's not your problem. Leave us alone." Guzman testified that Appellant prevented her from leaving the apartment several times and refused to let the children go. Appellant acknowledged to Guzman that he would be going to jail for what he had done but added that, if he found out that Guzman was "with anyone else," he would track down and kill her family when he got out.

When several Fort Worth police officers arrived, Appellant refused to comply with the officers' pleas to let Guzman and the children go, stating that this was a "family problem." Appellant threatened that if the officers continued to interfere, he was going to hurt Guzman, the children, and himself. Eventually, the officers convinced Appellant to release the children. As Appellant and Guzman continued arguing, Appellant declared that they were going to die together. When the officers heard a struggle and the sound of shattering glass, they kicked in the door. Officers rescued Guzman and arrested Appellant.[3]

The jury convicted Appellant of two aggravated assaults with a deadly weapon, burglary of a habitation, and aggravated kidnapping. Appellant elected to have the jury assess punishment, and he filed a sworn application for community supervision stating that he had never before been convicted of a felony. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4(e) (West Supp. 2010). Appellant's counsel timely objected to the trial court's proposed punishment-phase jury instructions in each case, asserting that they did not "include language regarding standard community supervision or probation." Defense counsel requested the following language,

---

[3]Appellant testified in both phases of trial. In the punishment phase, he testified that "[t]he circumstances lend themsel[ves] for everything that happened [sic], and that is why I'm now asking for forgiveness for the possible mistakes that I made. And I'm asking for forgiveness [for] the people that I directly or indirectly hurt. And for the people who hurt me, I also forgive them."

4

If you recommend that a defendant be placed upon probation, . . . the Court shall determine the conditions of probation and may at any time during the period of probation offer or modify the conditions.

The Court may impose any reasonable condition that is designed to protect or restore the community, [] protect or restore the victim, [] or punish, [], rehabilitate, [] or reform a defendant.[4]

Defense counsel asked the Court to "include that language regarding probation in each and all of the Court's charges."  The requested language tracks the statutory language that precedes the nonexclusive list of conditions that a trial court may require as part of a defendant's community supervision.  *See id.* art. 42.12, § 11(a) (West Supp. 2010).[5]  The trial court denied Appellant's requests but instructed that if the jury assessed Appellant's punishment at ten years or

---

[4]Defense counsel also asked the trial court to include the statutory definitions of "probation" and "supervision officer," which he read into the record. *See id.* art. 42.12, §§ 2(2), 2(3) (West Supp. 2010).  Appellant does not specifically assert on appeal that the trial court erred in failing to include these definitions.

[5]The statute provides:

The judge of the court having jurisdiction of the case shall determine the conditions of community supervision and may, at any time during the period of community supervision, alter or modify the conditions.  The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.  Conditions of community supervision may include, but shall not be limited to, the [following] conditions . . . .

*Id.* art. 42.12, § 11(a).

5

less, and if it found that Appellant had not previously been convicted of a felony, it could recommend that imposition of sentence be suspended and that Appellant be placed on probation. The trial court further instructed that "[i]n the event you recommend in your verdict that [Appellant] be placed on probation, then the law requires the Judge to suspend the imposition of the sentence and place [Appellant] on probation." The jury assessed punishment at confinement in the penitentiary for twenty years for the assault of Menchaca, five years for the assault of Guzman, ten years for burglary, and thirty-eight years for aggravated kidnapping. The trial court sentenced Appellant accordingly.

### III. Punishment Instructions Regarding Community Supervision

A trial court must instruct the jury to consider recommending community supervision if a defendant is eligible to receive it and he has followed the proper procedures for raising the issue. *See Thompson v. State*, 604 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1980) (holding that eligibility for community supervision is a valuable right and that the issue should be submitted to the jury whenever the record reasonably supports the request). In this case, the trial court properly provided the jury the option of recommending community supervision.

Appellant argues that the trial court erred by excluding the requested language that the trial court "may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or

6

punish, rehabilitate, or reform the defendant." *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a). He contends that, without this information, the jury likely assessed penitentiary time after speculating that Appellant would not be supervised while on probation.[6] Appellant cites no supporting authority but asserts that, because the jury is permitted to recommend probation, "it stands to reason" that the law applicable to such probation should include "the language . . . which describes the basic terms and conditions of probation."

We initially note that it is well settled that a trial court is not required to include in its punishment charge the terms and conditions a defendant might face if the jury recommended community supervision. *See Sanchez v. State*, 243 S.W.3d 57, 69–70 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Cagle v. State*, 23 S.W.3d 590, 595 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on reh'g) (citing *Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex. App.—Dallas 1987), *pet. dism'd, improvidently granted*, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989)). While Appellant challenges the trial court's refusal to include the language preceding the list of possible probationary conditions, he does not cite, and this court is not aware of, a statute or any case law that requires the trial court to include this language. *Cf.* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West

---

[6]The interchangeable use of the terms probation and community supervision is widely accepted. *Holcomb v. State*, 146 S.W.3d 723, 732 n.7 (Tex. App.—Austin 2004, no pet.).

Supp. 2010) (requiring, when applicable, an instruction describing parole eligibility). We agree with the State that, because a trial court is not required to define probation or list the conditions of probation, it follows that a trial court does not abuse its discretion in failing to include the statutory language preceding the list of conditions.[7]

Additionally, the court instructed the jury to deliberate the question of punishment "under all the law and evidence in this case," and the gist of what Appellant wanted to convey to the jury through the requested language was elicited through punishment-phase testimony.[8] For instance, Appellant testified that he was asking the jury to award him probation and that, if ordered not to

---

[7]We note that article 42.12, section 4 (rather than section 11) defines the jury's role in recommending supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 4; *see Ellison v. State*, 201 S.W.3d 714, 720 (Tex. Crim. App. 2006) ("While ordering the conditions of, and maintaining supervision over, a defendant's probation are outside the jury's province, the jury's primary duty is to recommend whether probation should be granted at all.").

[8]Additionally, the State explained during jury selection that, in certain circumstances, a defendant may be eligible to be placed on community supervision and that

> [c]ommunity supervision, probation, what that means is released into the community under the supervision of the Court. The Court may assess certain conditions, and the person has to follow those conditions in order to remain at liberty. But, basically, it means release into the community under the supervision of the Court. That is what used to be called straight probation. Now it's called community supervision. Okay?

8

have any contact with Guzman, he would follow that order. During the State's cross-examination, Appellant testified:

> Q. [State]: Tell me what you know about the conditions of probation. Do you know what they are?
>
> . . . .
>
> A. [Appellant]: The way that you live, the things that you can do and the things you cannot do.
>
> Q. Do you know any of the rules of probation?
>
> A. I believe some, not all of them. I have never been in a problem like this.
>
> . . . .
>
> Q. What guarantees can you give this jury that you will have absolutely nothing to do with [Guzman] or Mr. Menchaca?
>
> A. Whatever they ask me for [sic]. If they want to use one of this [sic] monitor on my ankle they can do it. . . .
>
> . . . .
>
> Q. Sir, an ankle monitor won't prevent you from being around [Guzman], will it? It will just tell probation that you violated.

On redirect examination, defense counsel asked Appellant, "If you are ordered not to have any contact whatsoever with Maria Guzman, will you follow that order?" Appellant responded "Yes" and further testified:

> Q. [Defense Counsel]: You understand that if you receive probation and you violate a term or condition of your probation, the Court could send you to the pen for up to ten years?
>
> . . . .

A.  [Appellant]:  Yes.

Q.  That if you even once contacted Menchaca or [Guzman] that could get you ten years in the pen?

A.  Yes.

During closing arguments, Appellant's trial counsel argued:

You can assure the safety of the victims by putting him on probation. . . .

. . . .

[N]o matter what period of probation, if he commits a material violation, as the State tells you, he can be arrested, brought back to court, have a hearing in front of the Judge, and if the Judge finds that he violated even one material term or condition of his probation, the Judge can sentence him to the pen . . . .  He'd still be limited to ten years in the pen for what he did if he doesn't change, if he doesn't live up to the terms and conditions of probation.

And as the State mentioned at trial, that includes paying probation fees, restitution to the victim for medical bills, reporting once a month for the next ten years, if that's assessed by the Court, to the probation office, staying out of trouble, staying off drugs, not drinking, having to perform urine tests every month.  For the next ten years, if that's what he gets on probation, his life would not be his own, and he would have to comply with all the terms and conditions of probation.  It's not letting him off.  And the victims have a chance at restitution for the medical bills they've suffered.

Thus, the trial court's charge, the testimony, and argument of counsel sufficiently informed the jury that the trial court could impose probationary terms and conditions if the jury were to grant community supervision.  *See Foxworth v. State*, No. 12-09-00313-CR, 2010 WL 3431598, at *1–2 (Tex. App.—Tyler Sept.

10

1, 2010, no pet.) (mem. op., not designated for publication) ("We believe that the court's charge, the testimony, and argument of counsel sufficiently informed the jury about the conditions of community supervision . . . for it to render a proper verdict."). We overrule Appellant's sole point.

## IV. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 18, 2011