

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00386-CR

**TEDDY LEE CALDWELL,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-297-C2**

## MEMORANDUM OPINION

In two issues, appellant, Teddy Lee Caldwell, challenges his convictions for two counts of sexual assault of a child and one count of indecency with a child by contact. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.011 (West 2011). We affirm.

### I. BACKGROUND

Appellant was charged by indictment with three counts of sexual assault of a child, a first-degree felony, and one count of indecency with a child by contact, a second-degree felony. *See id.* §§ 21.11(d), 22.011(f). The State alleged that appellant

perpetrated the charged offenses against his step-daughter, I.H., on or about May 1, 2010 and February 11, 2011.

The State proceeded to trial on two of the three counts of sexual assault of a child and the one count of indecency with a child by contact. At the conclusion of the evidence, the jury found appellant guilty of the three charged offenses and assessed punishment as follows: (1) ninety-nine years' confinement in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine for the first count of sexual assault of a child; (2) forty years' confinement with a $10,000 fine for the second count of sexual assault of a child; and (3) fifteen years' confinement with a $10,000 fine for the one count of indecency with a child by contact. The trial court ordered the imposed sentences to run consecutively and certified appellant's right of appeal. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence adduced at trial is insufficient to establish that the victim was younger than seventeen years old when the two counts of sexual assault of a child were allegedly committed.

### A.    Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.

> *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

To satisfy the elements of sexual assault of a child in this case, the State was required to prove that appellant intentionally or knowingly penetrated the sexual organ of I.H., a child under seventeen years of age at the time of the incidents, by any means. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A).

## B.  Facts

Marc Gosselin, formerly an officer with the Waco Police Department, testified that he was involved with the initial report regarding the purported sexual abuse perpetrated by appellant against I.H.  Gosselin noted that I.H. was seventeen years old at the time of the report and that her birthday is May 8, 1993.  At trial, I.H. testified that appellant first sexually assaulted her when she was sleeping in the same bed as her sister, P.H.  In this instance, I.H. stated that appellant "pulled [her] clothes, or whatever, down and put his fingers inside of [her]."  Later, I.H. noted that appellant repeatedly sexually assaulted her when she was a sixteen-year-old sophomore in high school and that the assaults continued until she was almost eighteen years old.  The victim recounted that appellant penetrated her vagina with his fingers two or three times while she was sharing a room with P.H. and that appellant also penetrated her vagina with his penis while her sister slept in the same bed.  Additionally, I.H. testified that she told CPS in February or March of 2011, when she was seventeen years old, that appellant had been sexually assaulting her for "a year, almost over a year and a half."

P.H. later stated that she saw appellant on top of I.H. having "[u]nwanted intercourse" and that I.H. would cry softly while it transpired. P.H. testified that I.H. was fifteen or sixteen years old when the sexual assaults first began and that the sexual abuse occurred "for a long time." Thereafter, P.H. noted that I.H. first started telling her about the sexual assaults perpetrated by appellant in the spring or summer of 2009, which would have been when I.H. was approximately sixteen years old. Furthermore, P.H. recounted that I.H. told her that the sexual assaults occurred long before P.H. saw it herself.

Later at trial, the State introduced the examining report of Ann Sims, M.D., wherein Dr. Sims mentioned the following about I.H.:

> [I.H.] told me that [appellant] started doing things to her when she was 16 and it continued for 2 years, including during the time she was having sex with her friend.[1] She said[,] at first[, appellant] did things to her at night in the room she shared with her sister. She said he would come in while everyone else was sleeping and pull the covers off (she would pull them back on and he would pull them off), pull down her pants and underwear, lie down on top of her and "stick his thing into me." She said that it hurt but didn't make her bleed. She said when he finished[,] he would tell her to pull her pants up and he would leave. She said he would also stick his fingers into her vagina and it would hurt a little. She said she would be wet after he finished, and she would get up early while everyone else was still sleeping and go take a shower. She said when he would come into the room[,] he would stand there and "look at me." She said she was scared to tell anyone, that "I knew what I'd go through, go through the system, and be taken away from my momma." [I.H.] said that her sister would hear her crying and knew what was going on, but she told her sister, "Don't say anything," so her momma wouldn't know. She said [appellant] would take the kids to the store to get them something, and she didn't want to go, but she didn't

---

[1] I.H. testified that a boy named "Lil Ron" impregnated her, but that she miscarried in the fall of 2009. I.H. also stated that she stopped having sex with "Lil Ron" after she became pregnant in 2009 and that appellant was having sex with her before she started having sex with "Lil Ron."

want her mom to find out what was going on so she went. She said [appellant] would buy them things, but he always "gave me more."

[I.H.] said that last year [2010] she started sleeping alone on the couch bed in the dining room, and that [appellant] would come in there and do the same things to her. She said her momma would be in her room asleep. She said [appellant] would "stand there and look at me, wake me up[,] and turn me over and pull my pants down." (She said she slept on her side). She said he would make moaning sounds while he was doing it to her. She said it always happened at night while everyone was asleep, and she would "lay there and cry." [I.H.] said that the last time [appellant] did anything to her was in February, just after Valentine's Day, and after her February period. She said she had been sleeping a lot and eating a lot and gaining weight since then, and she was worried that she might be pregnant, but then she had a period in March. [I.H.] denied that [appellant] had ever kissed her, touched her breasts, put his penis in her mouth or anus, or made her touch his penis.

And finally, the evidence established that I.H., her mother, and appellant all tested positive for the same sexually-transmitted disease—trichomonas vaginalis. I.H was diagnosed with trichomonas vaginalis in January 2010, and the record reveals that appellant tested positive for the same sexually-transmitted disease on November 20, 2006.

### C.  Discussion

Ordinarily, the testimony of a child victim is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.); *see also Dale v. State*, Nos. 10-11-00380-CR, 10-11-00381-CR, 2012 Tex. App. LEXIS 3127, at **24-25 (Tex. App.—Waco Apr. 18, 2012, pet. ref'd) (mem. op., not designated for publication). Further, courts give wide

latitude to the testimony given by child victims of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc).

Here, I.H. testified that appellant had sex with her and digitally penetrated her many times when she was sixteen years old.[2]  Moreover, I.H.'s sister, P.H., also testified that appellant perpetrated the sexual assaults against I.H. when I.H. was fifteen or sixteen years old.  Furthermore, the examining report of Dr. Sims and the fact that, by January 2010, appellant, I.H.'s mother, and I.H. all have the same sexually-transmitted disease—trichomonas vaginalis—supports the jury's conclusion that appellant had sex with I.H. when she was sixteen years old.

Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could have concluded that appellant intentionally or knowingly caused the penetration of I.H.'s vagina with his penis and his fingers on several occasions and that at least two of the incidents transpired prior to I.H.'s seventeenth birthday.  *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Hooper*, 214 S.W.3d at 13.  Accordingly, we hold that

---

[2] Later in her testimony, I.H. could not recall whether appellant sexually assaulted her before her seventeenth birthday; however, we note that it is within the province of the factfinder to judge the credibility of the witnesses. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). This means that the jury was entitled to believe all, some, or none of the testimony presented by the parties. *See id.* And because it is within the province of the jury, we are to defer to the jury's resolution of conflicts in the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 329, 99 S. Ct. 2781, 2792-93, 61 L. Ed. 2d 560 (1979); *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). With its guilty verdict, the jury resolved any conflicts in I.H.'s testimony in favor of the prosecution. Therefore, based on the foregoing case law, and given the wide latitude given to the testimony of child victims of sexual abuse, we defer to the jury's resolution of the facts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *see also Render*, 316 S.W.3d at 859.

the evidence is sufficient to support appellant's convictions for sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule appellant's first issue.

## III.    THE PUNISHMENT CHARGE

In his second issue, appellant complains that the trial court erred by not including "the mandatory condition of community supervision that the Court create a child safety zone as a condition of community supervision" in the punishment charge.

### A.    Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

**B.    Applicable Law**

Under Texas law, the trial court must provide the jury with "a written charge setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *see Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2008). However, Texas courts have stated that a trial court is not required to submit the statutory terms of community supervision in the jury charge on punishment. *Sanchez v. State*, 243 S.W.3d 57, 69 (Tex. App.—Houston [1st Dist.] 2007) (citing *Croft v. State*, 148 S.W.3d 533, 539 (Tex. App.—Houston [14th Dist. 2004, no pet.)). In addition, this Court has noted that the failure to enumerate all of the terms of conditions of community supervision is not considered harmful to the accused or restrictive of the court's authority. *Wade v. State*, 951 S.W.2d 886, 893 (Tex. App.—Waco 1997, pet. ref'd); *see Sanchez*, 243 S.W.3d at 69-70.

**C.    Discussion**

At trial, appellant did not object to the punishment charge, nor did he request that the trial court include the complained-of community-supervision provisions in the punishment charge.[3]    Furthermore, the jury did not recommend community

---

[3] Nevertheless, the punishment charge included the following instruction:

In this case, the Defendant has filed an application for probation, stating that he has never before been convicted of a felony offense in this State nor any other State. Our laws provide that if a person is charged with the offenses of Sexual Assault of a Child and Indecency with a Child by Contact, and if a jury finds him guilty, and if the punishment assessed therefor by said jury does not exceed ten years imprisonment, and

supervision for appellant and, instead, imposed sentences of ninety-nine years, forty years, and fifteen years—none of which made appellant eligible for community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(1) (West Supp. 2013). And finally, appellant does not cite any relevant authority that required the trial court to include the community-supervision instruction referenced on appeal. *See Cortez v. State*, 955 S.W.2d 382, 384 (Tex. App.—San Antonio 1997, no pet.) ("[N]o statute or decision requires the trial court to include the conditions of probation in the jury charge."); *McNamara v. State*, 900 S.W.2d 466, 468 (Tex. App.—Fort Worth 1995, no pet.); *Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex. App.—Dallas 1987), *pet. dism'd*, 779 S.W.2d 844 (Tex. Crim. App. 1989); *see also Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974) ("While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused or

---

> if the jury further finds that the Defendant has never before been convicted of a felony in this State nor any other State, then the jury may, in its discretion[,] cause the Defendant to be placed on probation during his good behavior.

The punishment charge then listed fourteen different conditions of community supervision. Furthermore, the punishment charge provided that:

> Now, therefore, if the punishment assessed by you does not exceed ten years imprisonment, and if you further find that the Defendant has never been before convicted of a felony in this State nor any other State, then you may, in your discretion, cause the imposition of the sentence in this case to be suspended, and cause the Defendant herein to be placed on probation during his good behavior.
>
> In the event you desire to suspend the imposition of the sentence of the Defendant and place him on probation, then let your verdict show that you find that the Defendant has never before been convicted of a felony in this State nor any other State, and further show that you recommend suspension of the imposition of the sentence, and that the Defendant be placed on probation. If you do not desire to suspend the imposition of the sentence and place the Defendant on probation, then you will say nothing in your verdict concerning the same.

restrictive of the court's authority under the statute."). Therefore, based on the foregoing, we cannot say that the trial court erred by failing to include the complained-of instruction in the punishment charge. *See Hutch*, 922 S.W.2d at 170. As such, we overrule appellant's second issue.

## IV.    CONCLUSION

Having overruled both of appellant's issues, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed September 11, 2014
Do not publish
[CRPM]

